# CHARLESTON.

## BIGGS *v.* HUNTINGTON.

Submitted January 11, 1889.    Decided February 5, 1889.

1. MUNICIPAL CORPORATIONS—STREETS, SIDEWALKS, &c.

   Our statute (Code 1887, c. 43, s. 53) imposes an absolute liability upon cities, villages and towns for injuries sustained by reason of the failure of municipal authorities to keep in repair the streets, sidewalks *etc.* within the corporate limits, provided its authorities have opened or controlled such street or sidewalk, where the injury was sustained, as a public street or sidewalk. (p. 61.)

2. MUNICIPAL CORPORATIONS—STREETS, SIDEWALKS, &c..

   In an action against such city or town the plaintiff must therefore allege and prove, that the street or sidewalk, upon which the injury occurred, at the time and place, when the injury was sustained, was controlled and treated by the municipal authorities as a public street or sidewalk and opened as such. (p. 61.)

3. MUNICIPAL CORPORATIONS—STREETS, SIDEWALKS, &c.

   This duty of a city or town in this State, to keep its streets, sidewalks, alleys *etc.* safe for foot-passengers and vehicles, is not met by keeping simply the bed of the highway or the surface of the sidewalk in proper condition ; but such duty is violated, if a dangerous excavation or open well be permitted so close to the margin of the sidewalk or highway as to make the use of them as such dangerous. But if a traveller unnecessarily for his own convenience deviates designedly from the highway and in so doing meets with an accident off from the highway, the city cannot be responsible, no matter how near the highway the obstruction may be.

Statement of the case by GREEN, JUDGE :

This was a suit brought by William Biggs, Sr., against the city of Huntington before a justice of Cabell county in which the plaintiff claimed damages to the amount In his complaint the plaintiff claimed damages to the amount of $200.00 for this : that the plaintiff's horse was killed on the 25th of September by falling into a hole or well on and

adjacent to the public and common highway known as "Third Avenue" in the corporate limits of the city of Huntington. To this complaint the defendant, the city of Huntington, pleaded not guilty; and thereupon a jury of six were duly sworn to try this issue, who having heard the evidence and arguments of counsel retired to their room to consider their verdict and returned into court with the following verdict: "We, the jury, find for the plaintiff and assess his damages at $107.50." And the defendant by its attorney moved the court to set aside the verdict and grant it a new trial, because the verdict was contrary to the law and the evidence, which motion was overruled by the justice, who signed the following bill of exceptions:

"Be it remembered, on the trial of this cause, after the jury was sworn to try the issue joined on the plea of not guilty, the plaintiff to maintain the issue on his part introduced a witness, A. J. Beardsley, who swore, that he was a resident of the said city, had been living there seven years, and was a practicing physician; and that on the night of the 25th of September, 1886, he was called to see a woman in what is called 'West Huntington,' in corporate limits of said city; and that the party, who came for him, said she was a city-patient, and that he was city physician, and that he got in his buggy at about 10 o'clock P. M., and drove down Third avenue opposite where the woman was sick, and some one standing in the front door of the house called to him and said that was the place; to come in. He then turned short off Third avenue, and drove across the sidewalk for the purpose of hitching horse and buggy to the fence on a lot by the side of the house that he saw, which was outside the line of the street; and that the lot was adjacent to the north side of the street, and the house on the lot was thirty feet from north line of street; and that he knew he was driving out towards the fence,—that he was leaving Third avenue; and that as he drove out of said avenue, his horse gave down in his shoulders but recovered, and then his hind feet went down in what he learned afterwards to be a well. Witness jumped out, and the young man who was in the buggy with him also, and they went to work to detach horse from buggy,

and as soon as he did so the horse fell down into the well, and was killed. The horse was worth $200.00 and belonged to William Biggs, Sr.; that the well was open as far as he could see, and was about from eight to twelve inches north of the line of the sidewalk and street, and that he did not know of the well until he drove into it; that there was no obstruction upon the street or sidewalk near the well to prevent him from driving up or down or across said avenue and sidewalk; that at the point where he was leaving Third avenue he knew there was no street or road, but he knew persons sometimes drove that way; that he had often passed along the street and sidewalk opposite to the well before accident, but that he never saw well at any time; that none of the city officials told him to go to see the woman, but that he often went to see patients, as city-subjects without being directed by any of the city officials; that he did not know the name of the woman he was to see, but thought her name was Tomlin; that there was no fence between line of street and well; that there was no barrier, guard or light at well, and, as far as he saw, there was no covering over well at the time; and that the well was on a level with the ground around it.

. "The plaintiff introduced one Lucien McGinnis, who swore, that at the time of the accident to the horse in question he lived in West Huntington, and that he saw the well before the accident some time but could not remember the date. The first time he saw it, it was open, and the next time it was covered; that the well was about twelve to eighteen inches out of the line of the sidewalk and street, and that the sidewalk on Third avenue was fifteen feet wide, but there was nothing but a dirt sidewalk; that gutter or drain between sidewalk and part of street traveled by horses or vehicles was about three feet wide and four to six inches deep.

"George Adams, introduced by plaintiff, swore, that before the accident to horse he had often seen the well; that he had spoken to Mr. Taylor, who was agent of the owner of the property, to have it covered; that the well was outside of the line of the street and was ten to twelve inches outside of the line marked off for a sidewalk, but there was no pavement, plank, stone or brick or curbing to indicate sidewalk, and

8

that vehicles sometimes drove out on either side of well into the lot; and that the well was about thirty or forty feet from the middle of the street usually traveled by horses and vehicles; and that all the ground including the street and the space around the well was level except the depression, which caused the dirt gutter; that he was away at the time of the accident; that the gutter or drain between sidewalk and street for vehicles was about three feet wide and four to six inches deep; that on the south side and opposite to well, where accident occurred, the sidewalk was plank and used by pedestrians.

"Henry Putoff, on the part of the plaintiff, swore, that he lived near place, where horse was killed, and that he was there the night the horse fell into well; and before that time the well was sometimes covered and sometimes not; and that he had notified T. W. Taylor, agent for the property, that the well should be covered or filled up; that the well was about middle way in the opening; that Beardsley told him that he started to drive out into the lot, when the horse went into the well; that there was a tree standing about twenty feet from where Beardsley crossed the sidewalk, where he could have hitched; that the city-lamp was burning about sixty feet away from the well; that he had notified T. W. Taylor, agent for the property, that the well should be covered or filled up, before the accident occurred; that the morning after the accident T. W. Taylor had the well filled up.

"Florence Webb, for plaintiff, swore, that, at the time the horse fell into the well, she was well acquainted with the locality living close by, and that the well was often uncovered, and that she had frequently kept some small children from falling into it; that a day or two before horse went into well she saw it, and that it was entirely uncovered; that she had never noticed any light or barrier there to keep persons from falling into it, and that she had frequently seen huckster wagons drive on to the sidewalk near the well. And the above was all the evidence introduced on the part of the plaintiff, and he here rested.

"The defendant then by its attorneys moved the court to strike out all of the evidence from before the jury, because

the same was insufficient to sustain any verdict for the plaintiff. The court overruled the motion of the defendant and refused to strike out the evidence; to which ruling of the court refusing to strike out the evidence the defendant excepted and prayed that its exceptions be saved it, which was done. The defendant then introduced some witnesses on its behalf, whose evidence did not materially change the evidence of the plaintiff, and it is so agreed by the parties, that said evidence need not be inserted. The jury retired to their room to consider of their verdict, and afterwards returned into court with the following verdict : 'We, the jury, find for the plaintiff, and assess his damages at $107.50.' The attorneys for the defendant moved the court to set aside verdict and grant it a new trial, because the same was contrary to the law and the evidence. Thereupon the court overruled the defendant's motion and refused to set aside the verdict and grant it a new trial as prayed for; to which ruling of the court in refusing to set aside the said verdict and grant a new trial the defendant by its attorneys excepted and prayed that this, its bill of exceptions to all and each of the rulings aforesaid, might be signed, sealed and made a part of the record in this case, which was accordingly done."

The city of Huntington afterwards, on October 28, 1887, obtained from the judge of the Circuit Court of Cabell county a writ of *certiorari* and a writ of *supersedeas* to this judgment of said justice, which was executed by the sheriff of said county by delivering to E. M. UNDERWOOD an office-copy of this summons and by an acceptance of the same indorsed thereon by the counsel of William Biggs, Sr. And on November 3, 1887, the said justice, E. M. UNDERWOOD, filed in the clerk's office of the Circuit Court of Cabell county the original papers of said case, which with the transcript of the record thereof shows it to have been as above stated. And on March 22, 1888, the Circuit Court made this final order in said case :

"The following order is entered as the order of this court *nunc pro tunc* in the place and stead of the order of this court in said cause entered on the 7th day of the present term of this court: This day came the parties, by their attorneys, and thereupon the plaintiff moved the court to dismiss the said *certiorari*

as improvidently awarded, which motion being considered is overruled by the court; to which ruling the plaintiff excepts. And the court, having maturely considered the transcript of the record of the judgment aforesaid, is of opinion that there is error in the judgment in said record; and this court proceeding to make such order as law and justice requires, it is therefore considered by the court that the judgment of the justice rendered herein on the 10th day of October, 1887, be, and the verdict of the jury rendered herein is, set aside; to which said rulings and each of them, and to which judgment, the plaintiff excepts. And it is further considered by the court that the action of the plaintiff be and the same is hereby dismissed, and that the defendant, the city of Huntington, recover against the plaintiff its costs by it in its behalf in this court and before the justice expended, including $5.00 as allowed by statute; to all of which rulings, judgments, and orders the plaintiff excepts."

From this order a writ of error and *supersedeas* was awarded William Biggs Sr. by a judge of the Supreme Court of Appeals of West Virginia on his giving bond with security in the penalty of $100.00, conditioned according to law.

*Gibson & Michie* for plaintiff in error.

*Simms & Enslow* for defendant in error.

GREEN, JUDGE :

In this case the question is raised as to the civil liability of a municipal corporation for an injury to a private person, caused by defective streets and sidewalks. The city of Huntington, the defendant, is a municipal corporation subject to section 53, c. 43, Code W. Va. 1887, p. 331, which provides, that "any person, who sustains an injury to his person or property by reason of a public road or bridge in a county or by reason of a public road, bridge, street, sidewalk or alley in an incorporated city, village or town being out of repair may recover all damages sustained by him by reason of such injury in an action on the case in any court of competent jurisdiction against the county court, city, village or town, in which such road, bridge, street or sidewalk may be, except

that such city, village or town shall not be subject to such action, unless it is required by its charter to keep the road, bridge, street, sidewalk or alley therein, at the place where such injury is sustained, in repair."

It will be observed, that the statute in express terms makes the town liable for damages for injuries sustained by reason of a defect in a public street or sidewalk. The language is unqualified and without exception or limitation; and therefore the question of notice or want of care on the part of the town is altogether immaterial. If the street or sidewalk was in fact defective, and such defect caused the injury to the plaintiff, it is no defence on the part of the town, that it had exercised great care in repairing the street or sidewalk. It is only necessary in such suit to allege and prove the existence of the defect, and that the injury was occasioned thereby. See *Sheff* v. *Huntington*, 16 W. Va. 307; *Chapman* v. *Town of Milton*, 31 W. Va. 384, (7 S. E. Rep. 22.) See, also, Shear. & R. Neg. § 389.

It is true, that the rule is otherwise in the case of towns or municipal bodies, upon whom no such absolute liability is imposed by their charter or by statute-law. They are only bound to exercise ordinary care and vigilance in keeping their streets in repair. And therefore before they can be made liable for injuries caused by a defect in a street or sidewalk not arising from its construction or from some act authorized by the corporation, either express notice of the nuisance or defect must be brought home to it, or the defect must be so notorious as to be observable by all for a sufficient time to enable the corporation to repair. Shear. & R. Neg. § 407; 2 Dill. Mun. Corp. § 1029. In such cases it is essential, that the plaintiff should both allege and prove notice to the corporation of the defect, which caused the injury. But in the other case it is not necessary. See *Noble* v. *City of Richmond*, 31 Gratt. 271; *Chapman* v. *Town of Milton*, 31 W. Va. 384; (7 S. E. Rep. 23.)

The defect, which caused the injury to the plaintiff's property—the killing of his horse by his falling into a well—was not precisely adjacent to any street or sidewalk of the city of Huntington. But the well was situated on the north side of Third avenue in the corporate limits of the city of Hunt-

ington about one foot north of the northern limits of the sidewalk along this avenue. It was uncovered and unguarded by any fence separating the sidewalk or avenue from it or surrounding the mouth of the well; and travellers along this avenue or sidewalk were not notified of the danger resulting from the fact, that there was an open well within one foot of said avenue and sidewalk either by exposure of a light or the display of any other signal of danger. There was opposite this well on the south side of the avenue a plank sidewalk usually used by foot-passenges, but there was no sidewalk on the north side of the avenue, where the open well was located. The sidewalk there was nothing but the natural dirt on a level with the open mouth of the well; and it was separated from the portion of the Third avenue used by vehicles and by travellers in vehicles only by a shallow gutter three or four inches deep and some three feet wide; so that the traveller along Third avenue had nothing in the way of a curb-stone or in any other form to indicate to him, where the northern border of the avenue began. There was nothing in fact to indicate to the traveller, when he had left Third avenue and was driving on the sidewalk along the northern border of the avenue, or when he had left it and was driving on uninclosed ground on the north of the sidewalk and on the same level with this sidewalk.

Under these circumstances Dr. Beardsly, a physician in the employment of the city of Huntington to attend certain paupers in the limits of the city, was on the night of September 25, 1886, at about ten o'clock called upon to attend one of the paupers. He got into his buggy, to which was hitched the plaintiff's horse worth about $200.00. He drove down Third avenue in the city of Huntington, until he got to a point opposite, where this sick pauper lived. Some one in the front door of her house, which was about ten yards north of the northern limits of this avenue, called to him and told him, that that was the place and asked him to come in. He therefore turned short at right angles in this Third avenue and drove across this dirt sidewalk, not separated from the avenue by any curb or in any other manner, his purpose being to drive across the ten yards intervening between the north line of this sidewalk and the fence surrounding this

pauper's house and hitch his horse to this fence. The horse barely crossed this sidewalk, when his front feet sank down in the open well, and shortly afterwards his other feet also sank down in this well. The doctor and a young man, who was with him in the buggy, jumped out and united in their efforts to save the horse. These efforts detached him from the buggy, and the horse then fell into the well and was killed.

None of the city-officials directed the doctor to pay this visit to this pauper, but he often went to see patients of the city without any special direction from any of the city authorities. There was no fence between the line of the street and this well and no barrier, guard or signal-light at the well. The doctor was ignorant of the existence of this open well, and while he knew, that in driving across the sidewalk to hitch his horse to the fence around the pauper's house, he would quit this Third avenue, still he knew also, that horses sometimes in going along this Third avenue quit its nominal boundaries, as he was doing, and drove on this open unin-closed ground on the north side of this avenue. In doing this he did not know he was incurring any danger, as he knew nothing of the existence of the well. It was proven that the mouth of the well was sometimes covered and sometimes not. There was no fence separating the mouth of this well from this Third avenue for about thirty feet.

The city of Huntington, the defendant in error, insists that Dr. Beardsley, who had charge of the plaintiff's horse at the time it fell into the well, drove out of Third avenue intentionally and knowingly for his own convenience to tie his horse to the fence of a vacant lot; and that, if a traveller without necessity or for his own convenience or pleasure deviates from the travelled track, which is in good condition, and in so doing meets with an accident outside of such track, the town is not liable for any resulting damages. Whart. Neg. § 968. There are certainly authorities which give more or less countenance to these views. See *Keyes v. Village of Marcellus*, 50 Mich. 439 (15 N. W. Rep. 542); *City of Scranton v. Hill*, 102 Pa. St. 378; *Sykes v. Pawlet*, 43 Vt. 446. There are, however, numerous cases where a traveller, though he meets with an accident off from the public street, has nevertheless recovered of the town the damages

he has sustained, when sustained very close to the edge of the public highway. The following were cases of this description: *Niblett* v. *Nashville*, 12 Heisk. 684; *Turnpike Co.* v. *Crockett*, 2 Sneed 271; *Memphis* v. *Lasser*, 9 Humph. 757; *Burnham* v. *Boston*, 10 Allen 290; *Hill* v. *Boston*, 122 Mass. 349.

We think, the true rule to be deduced from these cases is, that, if either an obstruction, excavation or hole be permitted by a town to exist though not actually within one of the public streets of the town yet so close to such a street as to produce danger to a traveller or passenger, who is using such highway or sidewalk prudently and properly, the corporation is liable for an injury for permitting such nuisance, though it be only close to the street and not immediately in such street.

My conclusion is that, if this open well was near enough to the travelled highway—Third avenue in Huntington city —to render the travelling on this highway dangerous; if this well uncovered and without barriers or fencing and without signal-lights to warn travellers left in this condition by the city of Huntington became the cause of the horse of the plaintiff falling into said well, while Dr. Beardsley was using this Third avenue in a prudent manner in the same way, that it was commonly used by travellers,—the city would be responsible.

The question, then, is whether Dr. Beardsley turning out of Third avenue and tying his horse, as was frequently done, to a fence within a short distance from this highway and not separated from it by an obstruction ceased to be a traveller, not meeting with the accident in attempting to use this avenue as a thoroughfare. This was, it seems to me, a question for the jury to decide, and it seems to me, that in deciding, that he did not intend to leave the highway and cease using it, they were sustained by the evidence, which showed, that, when the accident occurred, the buggy was still in this highway or on the sidewalk, and the horse not more than one foot from the northern edge of the highway and separated from it by no fence, curb or anything else. I am therefore of opinion, that the Circuit Court should have approved and affirmed the judgment of the justice, E. M. UNDERWOOD, ren-

dered Oct. 10, 1887, and should have rendered a judgment, that the plaintiff below, William Biggs, Sr., recover of the defendant below, the city of Huntington, his costs in the Circuit Court of Cabell county incurred, and damages according to law.

But the other members of the court are of opinion, that on the evidence in the case the jury was not justified in deciding, that Dr. Beardsley did not intend to leave the public highway and had not ceased using it as a public highway, when and where the accident occurred. And certainly it would be difficult to draw such conclusion in view of the fact, that Dr. Beardsley himself testified, "that he turned short in Third avenue and drove across the sidewalk for the purpose of hitching horse and buggy to the fence on a lot by the side of the house he was going to, which fence was outside the line of the street, and some thirty feet from the north line of the street, and he knew he was driving towards the fence." The necessary conclusion, they think, from this evidence is, that he without necessity and for his own convenience purposely left the travelled track of Third avenue, and that by so doing he met with this accident of the horse falling in this well; and that, if this was so, and the jury could not on the evidence find otherwise, then the city was not responsible, no matter how close the open well was to Third avenue; and therefore the verdict of the jury was so contrary to the overwhelming weight of the evidence, that it ought to have been set aside by the justice, and a new trial awarded, and the Circuit Court should have reversed the judgment of the justice for the amount found for the plaintiff by this verdict.

I admit, that the decided weight of the evidence was opposed to the verdict found by the jury, though I do not concur with the other judges, that it was so overwhelming as to require us to set aside the verdict, though the justice, who heard the evidence, refused to do so. The Circuit Court, in the opinion of a majority of this Court, did not err in reversing the judgment of the justice and in setting aside, reversing and annulling the verdict of the jury. But all the members of our court are of opinion, that the Circuit Court did err in dismissing the action of the plaintiff and rendering a

judgment in favor of the defendant against the plaintiff for its costs including five dollars allowed by statute. The verdict of the jury having been set aside, no judgment could properly be rendered, until the case has been again tried by a jury either before a justice or before the Circuit Court. As the court below has not acted on the question, whether this new trial should be had in the Circuit Court or before the justice as a court of review, we express no opinion on this point, but, will simply reverse the decision of the Circuit Court at the costs of the defendant in error, and remand the case to the Circuit Court, to be there proceeded with according to the principles laid down in this opinion, and further according to law.

REVERSED. REMANDED.