# CHARLESTON.

## GIBSON *v.* CITY OF HUNTINGTON.

Submitted June 22, 1893.—Decided November 11, 1893.

1. MUNICIPAL CORPORATIONS—DAMAGES.

A municipal corporation is absolutely liable for injuries caused by its failure to keep in repair the streets, alleys, sidewalks, roads and bridges. *Chapman* v. *Milton*, 31 W. Va. 385 (7 S. E. Rep. 22).

2. MUNICIPAL CORPORATIONS—DAMAGES.

A municipal corporation is liable for injuries sustained by the negligent management of its corporate property, to the same extent that private individuals are liable for the same character of negligence.

3. MUNICIPAL CORPORATIONS—DAMAGES.

A municipal corporation is liable for injuries caused by its negligence in the discharge of or failure to discharge such duties, as are purely ministerial, not governmental or discretionary

4. MUNICIPAL CORPORATIONS—DAMAGES.

A municipal corporation is not liable for injuries caused by the negligence of its agents and officers in the discharge of or omission to discharge duties, which are purely governmental or discretionary.

5. MUNICIPAL CORPORATIONS—DAMAGES—BURDEN OF PROOF.

When the injury sued for is alleged to have been caused by the defendant's negligent use of its corporate property, or in the discharge or omission to discharge of a ministerial duty, the burden of proving negligence is on the plaintiff; and if the jury by its determination finds, that the facts are not sufficient to sustain the charge of negligence, the court can not disturb the verdict, even though it be of a different opinion. To do so would be a denial of the right of trial by jury guaranteed by the constitution of this state.

GIBSON, HUTCHINSON & GIBSON, for plaintiff in error cited 27 A. M. Rep. 755 ; 9 N. E. Rep. 155 ; 25 A. M. Rep. 378 ; 79 Va. Rept. 86 ; 10 N. E. Rep. 442 ; 15 N. E. Rep. 824, Syl. 2 ; 63 Iowa 171 ; 90 N. C. 431 ; 64 Ia. 251 ; 51 A. M. Rep. 154 ; 31 A. M. Rep. 203 ; 9 S. E. Rep. 51 ; 18 Ill. 360.

CAMPBELL & HOLT, for defendant in error cited Code c.

43, s. 53; 9 S. E. Rep. 57; 2 Dill. Mun. Corp. § 1005; 8 All. 237; 32 W. Va. 55.

DENT, JUDGE:

Mary Lewis, an infant four years and five months old, while playing on the side of a road in the city of Huntington on the —— day of May, 1892, was killed by the falling of an embankment, which had been kept along the street or road as a barrier to keep travelers along the highway from driving into the adjacent creek. This embankment had been undermined to some extent by persons digging out sand and gravel, and was in a dangerous condition, as the death of the child bears witness. The street commissioner after some excavating had been done (how much, the evidence does not disclose) put up a notice forbidding the taking of sand and gravel from this place; but afterwards (how long does not appear, nor how long before the accident) a man by the name of Brown excavated sand and gravel and hauled it away; for what purpose is not revealed, but, so far as the evidence shows, it was without the knowledge of the municipal authorities. The jury were taken to view the place of the accident.

It is now firmly established, by a long line of well-considered decisions, that a municipal corporation is liable for injuries occasioned by its negligence in the following three classes of cases:   (1) Failure to keep its streets, alleys sidewalks, roads and bridges in repair under the statute;—(2) In the discharge of ministerial or specified duties, not discretionary or governmental, assumed in consideration of the privileges conferred by charter, even though there be the absence of special rewards or advantages;—(3) as a private owner of property to the same extent as individuals are liable. It would be impracticable to cite all the authorities settling these propositions, but the following are referred to as leading cases:   *Mendel* v. *City of Wheeling*, 28 W. Va., 233; *City if Richmond* v. *Long's Adm'rs*, 17 Gratt. 375; *Orme* v. *City of Richmond*, 79 Va. 86; *Mackey* v. *City of Vicksburg*, 64 Miss. 777, 2 South. 178; *Barnes* v. *District of Columbia*, 91 U. S. 540.

In the first class of cases, negligence is presumed, and

notice of defect is not required. In the second and third classes, negligence must be alleged and fully proven. *Chapman* v. *Milton,* 31 W. Va. 385 (7 S. E. Rep. 22); *Biggs* v. *Huntington,* 32 W. Va. 55 (9 S. E. Rep. 51.)

This suit is not proper under the first class or statutory provision, because it was not caused by any defect or obstruction in the roadbed; but it can be maintained under the two latter classes, because it is made the ministerial duty of the municipality by law to protect the public and individuals from anything dangerous, and the embankment that caused the injury was maintained by the city as its property in lieu of other barrier along and within the boundaries of a public highway. The city has no more right to erect or keep within or along a public highway an unnecessarily dangerous structure, even though it be for some public purpose, than a citizen has. It is true that the city did not erect this embankment, but, as the witness said, it was placed there by nature, and the city adopted and maintained it as a barrier to prevent travelers from driving into the creek. Had there been an artificial structure so rudely constructed of stone, wood or iron as to fall of its own weight and crush this child, the liability of the city would not have been questioned; and it certainly ought to make no difference whether the city builds or adopts one already there, even though nature was the original builder. It was its ministerial duty, neither governmental nor discretionary, to see that it was not dangerous to any one lawfully using the road or any part thereof. By leaving the embankment there as such barrier, the council fixed the limits of the road, and any one using it had the right to lawfully use it, up to the limit so fixed, whether it was the travelled part of the road or not.

Was the child using the road for a lawful purpose? Children are not responsible for the choice of their parents nor the place or condition of their birth. God decides these for them when he breathes into them the breath of life. Poor parents are unable to provide a place of healthful exercise and play for their children, for it requires all their earnings to clothe, feed and shelter them. The law prohibits them, under the penalty of being trespassers,

from entering on the lands of others; and now to forbid them to use the road to its utmost boundary for the purpose of play, when not interfering in any manner with the travelling public, would savor too much of the dark ages of barbarism, when children were subjected to inhuman and diabolical punishments, and their lives were at the mercy of those having charge over them. The roads are the only commons children now have, and to confine them in the narrow limits of their cheerless tenement houses would be cruel, unjust and oppressive, blight their young lives and render their bodies weak, sickly, scrofulous and vile; and, if they could manage to escape the long list of contagious diseases so fatal to their kind, they would grow up to adult age morbidly despising laws so tyrannous and unworthy a civilized and liberty loving people. It is a right they have immemorially enjoyed, and should continue to enjoy as long as the public fails to provide them other free commons, where they can have the pure air, bright sunshine and sportive exercise so necessary to the healthful growth of their sensitive bodies. Horses, cattle, hogs, dogs, and other domestic animals, are all at large in the streets, unless prohibited by special ordinance, and why not children? The public highways can be put to no better use. I am clearly of the opinion the child had the right to be there, even though out of the beaten path, and only for play. Neither was it old enough to realize the danger it was in, or the dangerous condition of the embankment, and could not possibly be guilty of contributory negligence.

The most troublesome question is that of negligence. In all cases where the remedy is not given by statute, but by the common-law, negligence must be proved by the party alleging it. Where the facts are indisputable, and there can be no fair difference of opinion as to whether the inference of negligence should be drawn, the question becomes one of law alone, and the court may decide it, if appealed to for this purpose. But, even where the facts are not disputed, if there may be a fair difference of opinion as to whether the inference of negligence should be drawn, or as to whether the facts sustain the charge of negligence, the

jury are the sole judges, and their verdict can not be disturbed, although the court may be of the opinion that the facts do not sustain it. The litigants have the constitutional right to a trial by a jury of fair and impartial men under the rules of law. Having demanded and had it, they have no right to complain, and the court has no right to interfere. It is a tribunal of their own choosing.

It has been held in cases of this character, "that notice to the corporate authorities, either express or implied, must be shown. If the defect causing the injury had existed for such length of time that proper diligence would have discovered it, then no notice need be proven; but if the defect arise otherwise than from faulty structure, or the direct act of said authorities or other agents, and be a recent defect, it is generally necessary to show that the town authorities had knowledge thereof a sufficient time before the injury to have by reasonable diligence repaired it, or that they were negligently ignorant of it." *Curry* v. *Town of Mannington*, 23 W. Va. 14.

The embankment was on the side of the road, in a remote part of the city. The authorities had the right to leave it there as a barrier, provided it was not dangerous to the lawful users of the road. There is no evidence tending to show that it was dangerous when left there, but the evidence shows, it afterwards became dangerous by reason of the excavations made under it. The street commissioner, when he found that persons were removing the sand and gravel, posted a notice warning them from so doing, not because he regarded it dangerous, but to prevent it from being destroyed as a barrier—the city's property. After this notice was put up (how long, the evidence does not disclose, nor how long before the accident, except as a mere conjecture) a man by the name of Brown, without the knowledge or permission of the authorities, and against the express notice posted as aforesaid, did further excavating of sand and gravel, and hauled it away, which, presumably, was the excavating that rendered the bank dangerous. It is not shown that the authorities had notice of this last excavating. On the contrary, it appears from the evidence that they had no notice of it.

The witness Brown, for some unexplained reason, is not introduced to show when or by what authority he did the excavating. It is true the street commissioner says he passed along there frequently, but it does not appear that he passed there after Brown had done his work, nor does it appear that there was anything to indicate to him that the embankment was in danger of falling ; and none of the plaintiff's witnesses testify that they had any knowledge beforehand of the dangerous character of the embankment that produced the injury; and one of his principal witnesses says : "I consider it dangerous from falling on top. I didn't know it would cave down on them."

From this evidence the jury certainly had a right to conclude that the structure was not rendered dangerous by the direct act of the city authorities; that they had no notice of its dangerous character a sufficient time before the injury to have by reasonable diligence repaired it; and that they were not negligently ignorant of it. While we might have found a different one, we have no right to disturb their verdict. Their decision is supreme and final.

But, even if this did not conclude us, there is another question that would ; and that is the jury were taken to view the spot and its surroundings. The counsel deemed it necessary. What effect this had on the minds of the jury in reaching a conclusion, this Court can not say ; but that it was material can not be doubted. The remoteness of the place, the situation and character of its surroundings and the nature and condition of the embankment would obviously all be taken into consideration in making up a verdict. None of these things are before this Court ; and the settled rule is that this Court will not disturb the finding of a jury unless all the material evidence touching the matter at issue, that was considered by the jury, is before it, as otherwise the case, as presented to the two tribunals, would be materially different.

No instructions were asked, and no points of law raised ; and, there having been a fair hearing before an impartial jury, this Court is legally powerless to interfere, and the judgment of the Circuit Court must be affirmed.