# CHARLESTON.

YEAGER v. CITY OF BLUEFIELD.

Submitted January 19, 1895—Decided April 6, 1895.

1. PLEADING—DECLARATION—SPECIAL DAMAGES — PARTICULAR INJURY.

A declaration in case against a city for personal injury by reason of a defect in a street crossing, alleging that the plaintiff fell, and thereby was "greatly injured, bruised, wounded and crippled," is not bad because it does not state the particular injury, as a broken leg, for instance. Where special damages consequent on the particular injury are claimed, it seems otherwise.

2. EVIDENCE—EXCLUSION OF EVIDENCE.

Where the plaintiff's evidence appreciably tends to sustain the action, the court ought not to strike it out.

3. EVIDENCE—VERDICT—REVIEW OF EVIDENCE.

Under section 9, chapter 131, Code, 1891, when exception is taken to the action of the court upon a question involving evidence on a motion for a new trial or otherwise, all the evidence, conflicting or not, may be certified, and this Court must consider all such evidence, whether conflicting or not, not rejecting any from consideration. If, upon such evidence, the verdict plainly appears to be contrary to or without sufficient evidence, plainly against the decided and clear preponderance of evidence, it may be set aside, though the evidence be conflicting. This power should be exercised with great caution.

4. MUNICIPAL CORPORATIONS—STREETS AND SIDEWALKS.

A municipal corporation is not an insurer against accidents upon streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, with ordinary care, by day or night; and whether so or not is a practical question to be determined in each case by its particular circumstances.

5. MUNICIPAL CORPORATIONS—LIABILITY.

While the liability of municipal corporations is in its nature absolute, that does not refer to the cause of action. That must exist before the liability arises.

JOHNSTON & HALE for plaintiff in error, cited 37 W. Va. 579; 37 W. Va. 115; 31 W. Va. 478; 35 W. Va. 406; 34 W. Va. 465; 33 W. Va. 718, 723; 16 W. Va. 326; 54 Am. Dec. 467; Code, c. 43, s. 53; Id., c. 43, s. 7.

JOHN McGRATH for defendant in error, cited 16 W. Va. 307; 37 W. Va. 606; 31 W. Va. 386; 19 W. Va. 323; 35 W. Va. 682; 127 Mass. 329; 131 Mass. 443; 97 Mass. 268, 272; 122 N. Y. 430; Whar. Neg. §§ 980, 996; Code, c. 47, s. 28; 32 W. Va. 55; 33 W. Va. 547; 31 W. Va. 842; 37 W. Va. 111; 38 W. Va. 273 ; 35 W. Va. 389; 37 W. Va. 579; 99 N. Y. 654; 20 N. W. Rep. 668; 110 Mass. 131.

BRANNON, JUDGE:

This was an action of trespass on the case in the Circuit Court of Mercer county by Theodore Yeager against the city of Bluefield to recover damages for the breaking of the plaintiff's leg, on the allegation that it resulted from defect in the crossing over one of the streets, in which there was a verdict for three thousand five hundred dollars and a judgment. The city brings the case here.

There is an objection to the declaration, the point of the objection being that it is too general in its statement of the injury to the plaintiff's person—the allegation being that by reason of his fall he "was greatly injured, bruised, wounded and crippled, and put in great danger and peril"—and that it should have alleged that his leg was broken. No authority is cited to sustain this point, but it seems to be relied upon with confidence. I think the declaration sufficient on this point. The plaintiff sues for a bodily injury. That is clearly alleged. That his leg was broken is only a fact evidentiary of the ultimate fact predicated; that is, that he was injured, bruised, wounded and crippled. Pleadings need not state evidence, but only ultimate facts shown by the evidential facts—the ultimate facts—else there would be endless prolixity, as ultimate facts may include many subordinate or evidential facts. Often it is imprudent to allege such facts, as it produces variance. 1 Chit. Pl. 407. See *Hawker* v. *Railroad Co.*, 15 W. Va. 635. If a man's wagon is broken by reason of a road's defects, he can charge that it was injured, broken and rendered useless, without saying its axles and wheels were broken. I have found very little pointed law on the subject, common as the matter seems, and it is a matter not without practical importance.

In *Corey* v. *Bath*, 35 N. H. Rep. 531, a case for personal injury from defect of a highway, the very point was maturely considered, and it was held that it was not necessary that the injuries received by the plaintiff should be particularly described in the declaration. It is enough if it shows that the plaintiff received a bodily injury. I have found nothing to the contrary. The rule contended for would condemn precedents long approved and everywhere used in assault and battery, which are of same nature as the declaration in such cases as this. Declarations for assault and battery allege that the defendant did beat, wound and ill treat the defendant, without saying how he did beat him or wound him, without giving the mere manner of wounding. So with indictments for that offense. This is the rule where only general damages are claimed. Where special damages are claimed, it is different. For instance, if the plaintiff were engaged in any business requiring specially the use of the limb, and the injury unfitted him for that business, then the injury to that limb, I think, should be specified, as its result or consequences in the particular case would be loss of business. 1 Chit. Pl. 411, 412. At this point I notice a form in 2 Chit. Pl. 281, for placing rubbish in a street, overturning carriage, and injuring plaintiff, using only the general language that plaintiff "was greatly hurt, bruised, cut and wounded and sick and sore." It is a case just analogous to this.

Another ground of demurrer is that the declaration alleges that the crossing over the street was uneven, sideling, muddy, rocky, and slippery, and there was a deep mudhole in it, and the crossing in bad order and condition, and out of repair, and no proper crossing had been made, and the street founderous and covered with mud and water; and the contention is that the plaintiff saw, or could have seen, the danger, and in crossing was guilty of contributory negligence. I do not concur in this point of demurrer. It was essential that the declaration charge these things to maintain the action, and so stating does not bar the plaintiff of his action. It does not state that plaintiff knew its bad condition. And, even if one knows a street is in bad condition, he need not stay indoors, and he need not refrain

from crossing. It does not appear from the declaration that the defects were patent, and the danger obvious, so as to deter a prudent man from doing what everybody does—pass along streets even though not in proper condition. This declaration states these matters as basis of defendant's negligence. He does not admit his own contributory negligence, and any inference that might be drawn of it he need not negative. *Sheff* v. *Huntington,* 16 W. Va. 307.

The next question of the case is whether the defendant is liable upon the facts. And that depends upon whether the crossing was defective within the meaning of the statute (section 53, chapter 43, Code 1891) that "any person who sustains an injury by reason of a public road or bridge in a county, or by reason of a public road, bridge, street, sidewalk, or alley in an incorporated city, village or town, being out of repair may recover all damages sustained." When we are told, as in *Chapman* v. *Milton,* 31 W. Va. 384 (7 S. E. Rep. 22) and *Gibson* v. *City of Huntington,* 38 W. Va. 177 (18 S. E. Rep. 447) that the liability of cities and towns for injuries by reason of streets being out of repair is absolute, we must not be misled. It is meant that, when the basis or cause of the liability exists, that liability is absolute in the sense that no want of notice or other excuse for the defect in the street will exonerate the town. But this idea of absoluteness does not refer at all to the cause of liability, but only to the liability when it exists. It does not mean that the state of the street must be perfect. Before imposing this absolute liability, we must first determine whether the street is out of repair in the sense of the statute. When is it so out of repair? Is it to be absolutely free from stones, mud, or inequalities, like the floor of your own home, or like the paths, walks and drives in the grounds of a royal palace or beautiful park? Where shall we find this perfection? Is it to furnish absolute immunity from accident and injury? What city or town in the country might not be bankrupted if this is to be the construction of the statute? There is no city, however well ordered, complying with this standard. None could do so with the means at its command. short of confiscatory taxation. It is hard,

indeed impracticable, to define in advance, suitably for
every case, just what the words "out of repair" here used
do mean. About all that can be said by way of general
rule is that cities, towns and villages are simply required to
keep streets and sidewalks in a reasonably safe condition
for persons traveling in the usual modes by day and night,
and exercising ordinary care. Elliott, Roads & S. 448.

This Court has held against the doctrine of the highest
state of repair by announcing the law to be that: "A mun-
icipal corporation is not an insurer against accidents upon
streets and sidewalks. Nor is every defect therein, though
it may cause the injury sued for, actionable. It is suffi-
cient if the streets—which include sidewalks and bridges
thereon—are in a reasonably safe condition for ordinary
travel in the ordinary mode, by night as well as by day; and
whether they are so or not is a practical question to be de-
termined in each case by the particular circumstances."
*Wilson* v. *City of Wheeling*, 19 W. Va. 323. Let it be under-
stood once for all, under the principle long ago announced
by this Court, and ample authority elsewhere, that the law
does not require a municipal corporation to respond in dam-
age for every accident that may be received upon a public
street. The law does not require it to have its streets or
sidewalks so constructed as to secure absolute immunity
from danger in using them; nor is it bound to employ the
utmost care and exertion to that end. 2 Dill. Mun. Corp.
§ 1006. Were it otherwise, what would be the burden cast
upon taxpayers in this state, where heavy rains and snows
constantly fall, freezes and thaws frequently come, which,
with other causes, work great and constant injury to streets?
Now let us look at the present case in the light of these prin-
ciples.

The claim of the plaintiff is that on a December night he,
in company with another, was walking along Princeton
avenue, and crossing Bland street at its junction with the
avenue, he stepped upon a stone, to keep out of the mud,
and, it slipping from under him, he fell and broke his leg.
There were two mudholes, as plaintiff's evidence tends to
show, in the crossing—one very small, one of considerable

size and depth—and this rock was between them, two to three feet from one, and one foot from the other, people passing between them. The rock was eight or ten inches wide—as large as a spittoon. He could have passed between the rock and either mudhole, though it would have put him in mud, as a bright electric light sixty feet distant was giving light, and, besides, Yeager's companion had a lantern; and when they reached Bland street Yeager himself saw the situation, as he exclaimed, "Look out; here is a bad place." If disposed to be rigid, we might say that he should not have stepped on this rock, and thus have used the very thing he now says was a defect. But waive that. What is the particular point of defect causing the injury? Not alone the mudhole, as he avoided that. I suppose it is that the crossing was uneven and sideling, causing the rock to slip, and when he fell his legs went into the mudhole, increasing the force of the fall. This evidence adduced by the plaintiff was enough to go before the jury, as appreciably tending to sustain the action, and the motion of defendant to exclude it was correctly overruled. *Powell* v. *Love*, 36 W. Va. (14 S. E. Rep. 405). And yet it may be gravely questioned whether, tested by the plaintiff's evidence alone, the action is sustainable. But when we look at all the evidence we are led by the clear and decided weight and preponderance of it to say that the verdict is contrary to the evidence. We must look at and consider the evidence on both sides, including the evidence in conflict with that of the plaintiff. Code 1891, chapter 131, s. 9; *Johnson* v. *Burns*, 39 W. Va. 658 (20 S. E. Rep. 686).

The defense introduced thirteen witnesses whose evidence bears on the condition of the crossing, as against six for the plaintiff, and, so far as we can see from paper and positions of trust and business held by them in the community, their evidence is credible. We do not see that any question of veracity was made against them. The evidence shows that a couple of months before this accident there was a large mudhole in Bland street at its junction with Princeton avenue, and that limestone rock was hauled and thrown into it, and a crossing made clear across it, at least

eight feet wide, the work occupying three days with three teams and twelve men. The rock was broken to the size used in macadamization—about as large as an egg. It was level, and only sideling or inclined, to give drainage. There were no mudholes in the crossing when the accident took place. There was no such sized rock there as the plaintiff claimed; indeed, no rock. Men examined it that night and next morning, and no rock was seen. It was a good, solid crossing. Special labor and attention had been just used to make it so. The statute commands us to consider all the evidence, and, unless that consideration is a merely perfunctory one, we are compelled to say that this is the state of the case, decidedly, under the evidence. The evidence conflicts as to the presence of the mudhole and stone, the decided weight being with the defense. Muddy and slippery this crossing was. The true explanation of the accident is that the plaintiff, in making long steps or effort to get quickly across, and avoid or hasten through the mud, slipped. No doubt the mud there caused the slip. Had the crossing been free of it, likely the fall would not have occurred. Then the case narrows itself to the question, is the presence of this mud a defect under the statute? If so, what town of moderate size in the state would not be subject to action upon action? This mud was peculiarly slippery—"as slick as glass," both sides say; but that was owing to the peculiar character of the soil in those parts; as some witnesses say, it was an ocherous soil, and the slickest substance anywhere to be met. Princeton avenue and Bland street were not macadamized in this newly built town, and wagons would inevitably and constantly deposit from their wheels on this crossing quantities of this mud, as this crossing was very prominent in this business town. Did this make the road actionably defective? I say not. And this is the length and breadth of the city's offense, if we must say it arose from anything pertaining to the crossing, and not from an unaccountable accident, as several witnesses say it was. Any one is liable to fall in walking, especially at night, using the legs in effort to cross muddy places. It is charged by the town that the plaintiff was

drinking. I do not at all place the misfortune on that ground. I think it was simply an accident, or, if the city is chargeable, it is only because of the mud on the crossing. Is that enough to make it liable? Our state has great and often-recurring precipitation of rain and snow, especially in winter. Mud follows inevitably everywhere. No means at a town's command can prevent its presence in some quantity, even on crossings, and in small quantity it makes them slippery.

In applying this statute we can consider the location of the road, the nature and circumstances of the particular section, the difficulty of keeping it in high repair without unreasonable expense, the season of the year, and the nature and amount of travel. Ang. High. § 259. The mere slipperiness of a sidewalk occasioned by ice or snow—the same, certainly, as to mud—"not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city liable for damages occasioned thereby. Where there is snow upon a sidewalk, there is danger from slipping and falling, even on the best constructed sidewalks." 2 Dill. Mun. Corp. § 1006. This mud's presence was not a structural defect, not an obstruction.

Being of opinion that the verdict is contrary to the evidence, we reverse the judgment, set aside the verdict, award a new trial, and remand.