EDITH O. TOLER *v.* CITY OF CHARLESTON

(No. 7895)

Submitted May 16, 1934. Decided June 5, 1934.

*J. Howard Hundley* and *A. N. Breckinridge,* for plaintiff in error.

*Charles Ritchie* and *Philip H. Hill,* for defendant in error.

MAXWELL, JUDGE:

Writ of error was awarded the plaintiff, Edith O. Toler, to a judgment of the circuit court of Kanwaha County, setting aside a $10,000.00 verdict which had been rendered in her favor against the defendant, City of Charleston. The action is for personal injuries.

As the plaintiff was walking along a sidewalk of Truslow street of said city, an overhanging limb of a tree in the front lawn of a privately owned residential property fell and struck her, causing serious injuries. The limb, about sixteen feet long and three or four inches in diameter at the base, fell a distance of from 20 to 30 feet. There is no evidence tending to show that the external appearance of the limb indicated an unsound condition, except that it probably bore a little less foliage than the sound limbs of the tree. An examination of the limb after it fell disclosed that it had a "doty" or darkened condition indicating dry rot for a diameter of about one and one-half inches at the heart.

Is the defendant liable in damages for the plaintiff's injury?

A statute of this state contains the following provision:

> "Any person who sustains an injury to his person or property by reason of any county-dis-trict road or bridge, or any street, sidewalk or alley in any incorporated city, town or village, being out of repair, may recover all damages sustained by him by reason of such injury in an action against the county court, city, town or

village in which such road, bridge, street, side-walk or alley may be, * * *." Code, 17-9-33.

This statute, in substantially its present phraseology, has been in force since the early years of our state government. Code 1868, chapter 43, section 55. The word "repair" as used in the statute includes obstructions to the highway as well as defects therein. *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, 90 S. E. 347. By a statute enacted in 1921 and later amended, obstructions, within the meaning of the road law are defined to include, among other things, "trees which have been cut or have fallen either on adjacent land or within the bounds of a public road in such a manner as to interfere with travel thereon; limbs of trees which have fallen within a public road or branches of trees overhanging the same so as to interfere with travel thereon * * *." Code, 17-16-1.

Considering first the quoted provisions of the later statute, we are of opinion that limbs therein referred to are such as have fallen in the road or street and impede the customary use thereof, and not limbs in the act of falling, and that overhanging branches referred to in the statute are attached limbs extending in such manner as will cause interference with the passage of usual and ordinary traffic along the way, and not overhanging limbs many feet above the space requisite for the passage of pedestrians, horsemen and vehicles. No other analysis is consonant with the phraseology of the statute which indicates that its sole purpose is to deal with highway obstructions which impede traffic. No attempt is made in the statute to define or particularize extraneous conditions which may cause injury to a traveler.

Plaintiff takes the position that under the first above quoted statute, unqualified liability rests upon a city for injuries caused to one's person or property by disrepair of a street; that the falling of a limb upon a street comes within the purview of the statute. In support of this position, reliance is had upon holdings of this court that the liability of a municipality or county court for injuries caused by a street or highway being out of repair is ab-

solute. Thus, the statement, with authorities cited, in *Blankenship* v. *City of Williamson,.* 101 W. Va. 199, 202, 132 S. E. 492, 493:

> "Our statute imposes an absolute liability upon cities for injuries sustained by reason of the failure of the municipal authorities to keep in repair their streets and sidewalks. Code, ch. 43, sec. 167; *Chapman* v. *Milton,* 31 W. Va. 384, 7 S. E. 22; *Biggs* v. *City of Huntington,* 32 W. Va. 55, 9 S. E. 51; *Yeager* v. *City of Bluefield,* 40 W. Va. 484, 21 S. E. 752; *Pollock* v. *Wheeling Traction Co.,* 83 W. Va. 768, 99 S. E. 267; *Stanton* v. *City of Parkersburg,* 66 W. Va. 393, 66 S. E. 514."

It is not to be understood, however, that said pronouncement means that whenever there is a street or highway accident, which Utopian conditions of thoroughfare might have prevented, unescapable liability therefor is fastened upon the municipality or the county court. Prior decisions have made plain the meaning with which the word "absolute" is used when applied to said statute. This matter was elucidated by Judge Brannon in *Van Pelt* v. *Town of Clarksburg,* 42 W. Va. 218, 24 S. E. 878:

> "When the Court has heretofore said that the liability of the town is absolute, whether it had notice of the defect or not, it was not meant that the presence of any and every defect in a street contributing to an injury would render the town liable, without regard to the character of the defect, but that, when once such defect was shown as would be actionable, then the liability was absolute in character, whether the town had notice of the defect or not. The statute does define the character of liability, or, rather, the liability which it imposes is absolute in character when the cause or ground of liability exists; but it does not define that cause or ground of liability by saying what manner of defect in a street will fix that liability, leaving this an open question in each case, to be determined under all the circumstances, taking into consideration the

physical structure and nature of the country, its climate, and other things naturally pertinent to the matter. If this construction of the statute is not given, then our counties and towns must keep watchmen always on their streets and roads to discover every deterioration in them, from weather and wear, and instantly repair them at all seasons; in short, keep them in that high state of repair which would tax most of the counties and towns of the state beyond their capacity to bear. Such a construction would beget innumerable suits. Such a construction would make counties and towns insurers against all accidents befalling travelers."

An earlier case on this point is *Yeager* v. *City of Bluefield*, 40 W. Va. 484, 21 S. E. 752. It was therein held that the absolute liability rule means that,

" * * * when the basis or cause of the liability exists, that liability is absolute in the sense that no want of notice or other excuse for the defect in the street will exonerate the town. But this idea of absoluteness does not refer at all to the cause of liability, but only to the liability when it exists. It does not mean that the state of the street must be perfect. * * * Is it to furnish absolute immunity from accident and injury? What city or town in the country might not be bankrupted if this is to be the construction of the statute? There is no city, however well ordered, complying with this standard. None could do so with the means at its command, short of confiscatory taxation * * *. About all that can be said by way of general rule is that cities, towns and villages are simply required to keep streets and sidewalks in a reasonably safe condition for persons traveling in the usual modes by day and night, and exercising ordinary care." *Cf. Riley* v. *City of Ronceverte*, 108 W. Va. 222, 225, 151 S. E. 174.

The Massachusetts case of *Andresen* v. *Town of Lexington*, 240 Mass. 517, 134 N. E. 397, makes application of the principles which we think are determinative of the case at bar. It was held that "a limb of an ornamental

shade tree on private property adjoining a public way, which became severed and fell upon telegraph wires where it remained cradled for several hours about fifteen feet above the way, when it fell upon and injured a traveller upon the way, is not a 'defect * * * in or upon a way' within the provisions of G. L. c, 229, Sec. 1." The statute referred to differs from ours in that it makes notice of the defect to the public authorities a condition precedent to recovery, but it is very similar wherein it provides that if a fatality results, "by reason of a defect or a want of repair of * * * a way, causeway or bridge, the county, city, town or person by law obliged to repair the same shall * * * be liable in damages * * *."

The case of *Hewison* v. *City of New Haven*, (Conn.) 91 Am. Dec. 718, presented a situation analogous to the one at bar. A pedestrian was killed by the falling of a heavy iron weight "attached to a large piece of cloth which was suspended across the street". Liability was sought to be established against the city under the provisions of a statute which read:

> "If any person shall lose a limb, break a bone, or receive any bruise or bodily injury by means of any defective bridge or road, the town, person, persons, or corporation which ought to keep such road or bridge in repair shall pay to the person so hurt or wounded just damages."

A correlated provision of the Connecticut statute made it the duty of towns to "make, build, and keep in good and sufficient repair all the necessary highways and bridges within the limits of such towns." The resemblance of those statutes to our own, particularly in respect of "repair", is noticeable. The Connecticut court held that under the said statutory provisions there was no liability on the city for the death of the plaintiff's intestate. In the opinion, the court said:

> "We are not prepared to establish the doctrine that everything which renders the highway unsafe makes it defective within the meaning of

this act. Such a construction would impose heavy and unnecessary burdens upon towns. It would in effect make them insurers, for the time being, of the safety of travelers upon the highway,—a liability to which the legislature never intended to subject them. If they had so intended, it must be presumed that they would have expressed such intention in clear and unmistakable language."

A West Virginia case not without pertinence on this consideration is *Watkins* v. *County Court,* 30 W. Va. 657, 5 S. E. 654. A traveler on a highway was injured by the falling of a dead tree which had stood about five feet from the road. The opinion presents a discussion as to whether at the time of the accident the duty devolved upon the surveyor of roads to remove dead timber endangering travel. The court said, however,

"* * * even if it were admitted that it was the duty of the county precinct surveyor to cut down the dead tree standing within five feet of the public road, and that by reason of his not performing this duty, the plaintiff, W. H. Watkins, while traveling along the public road, suffered serious personal injury from this dead tree falling upon him, neither this nor any other action could be sustained by him against the County Court to recover damages for such injury, as it can not be pretended that an action is, expressly or by necessary implication, given against the County Court for the failure to cut down dead trees standing near the public road."

The statute referred to is the one hereinbefore discussed, Code, 17-9-33. In further explanation of the statement just quoted, we direct attention to syllabus 1 of *Carder* v. *City of Clarksburg,* 100 W. Va. 605, 131 S. E. 349: "A city is not liable for the negligence of its servants and agents when through them it is performing a function purely governmental for the benefit of the public."

The principles discussed and authorities cited direct

us to the conclusion that the circuit court committed no error in setting aside the verdict of the jury.

*Affirmed.*