ROBERT L. BLAND, Judge.
It appears from the record of this case that on October 14, 1940, Hoiner M. Lambert was instantly lulled in an automobile accident in Monongalia county, West Virginia, on route No. 73, at the foot of the hill south of Pisgah Church. This is a claim filed by Rachel C. Lambert, administratrix of the personal estate of the said Homer M. Lambert, deceased, for an award in damages for the death of her said decedent. The claim is prosecuted upon the theory that the failure of the state road commission to keep and maintain said road in good condition for public travel was responsible for the accident and death. Claimant and respondent have submitted the case upon a duly signed stipulation of facts. We are met at the threshold of our examination of these facts by the question whether they show a cause of action against the state. A cause of action must exist before liability arises. Yeager v. Bluefield, 40 W. Va. 484; Williams v. Main Island Creek Coal Company, 83 W. Va. 464.
*187 In re claim No. 49, Sarah K. Moore v. State Road Commission, we held:
“The mere lad of injury received oil a state highway raises no prosumptiem of negligence on the part of the state road commission. Under the act creating the court of claims negligence on the part of the state agency involved must he fully shown before an award will he made.”
The only occupants of the automobile at the time of the accident. were Miss liuth Carroll and (lie said Homer M. Lambert. The petition alleges that “the car in which they were riding was being driven twenty-live miles per hour and on the extreme right of the road to avoid tradie coming in the opposite direction, when it dropped off the hard surface abruptly into a ditch or low place on the berm of the road and turned over twice down the embankment.” It is charged that “the low place on the berm immediately next to the concrete surface existed for a distance of two hundred feet or more along the bend or curve in the road and varied in depth from six to ten inches. The slate road commission had negligently suffered this defect to exist for several weeks, but repaired it immediately after the accident.”
Miss Carroll is shown to he a driver of some live years’ experience; and, according to her estimate the automobile was being driven at the time of the accident at about twenty-live miles per hour. It is disclosed by the' stipulation of facts that in endeavoring to get the vehicle under control after getting hack on the hard surface' it again left the re>ael anel turnee! ove'r down an embankment. James Thomas, whe> was lollowing about thirty feet behind the' Lambert car, state's that it was traveling between thirty-live' anel Ibrty mile's per heñir, and that when its right rear wheel elre>ppeel e>ff the edge of the roael it. swayeel te) the e>lher side' of the reeael anel came ae-mss the re>ad anel e>ve>r the hill. Miss Carredl, the driver, rennembers that she got the car hae-k on the highway after dropping olí the be'rm hut has ne> recedleetion eif what happened after that. When aid reacheel her she' was founel le> have' sustained a blow anel bruise on the *188 head in addition to a broken back. The Lambert car was not being approached by another vehicle or pedestrian traveling the highway at the time and place of the accident from the opposite direction.
Trooper W. D. Sergeant of the West Vriginia department of public safety made an official investigation of the accident on the date of its occurrence. He found that the tire marks of the automobile on the highway began sixty-one feet south of the north end of the white line on the road and ran south along the west edge of the hard-surface for a distance of forty-nine feet. This tire mark came back on the highway and ran toward the east side of the highway in a curve line and thence back across the road to the west side. The length of this tire print was one hundred and fifty feet to the west edge of the hard-surface and extended on west for a distance of twenty feet to the edge of the berm. Number two tire mark began where a number one tire mark came back on the highway and ran parellel with number one tire mark to the west edge of the berm. The car was sitting upright, headed north, seventy-nine feet from the west edge of the hard-surface to the right rear wheel of the vehicle. The decedent was lying on his back forty-two feet west from the left rear wheel of the automobile, with his head south.
The automobile was a 1934 Ford Tudor vehicle, bearing West Virginia license No. 142-886, and was the property of the decedent and subject to his direction and control. It does not appear from the record why it was being driven by Miss Carroll.
Can it be said that the highway was “unsafe for. reasonable use in the ordinary methods of travel” on the day of the accident?
The state is not an insurer against accidents upon its public highways. Claims against the state for injuries or death upon its public roads should be based upon legal or equitable right. For such claims only may awards properly be made. It appears *189 that West Virginia route No. 73 is an improved, hard-surface road, with concrete and cement top, eighteen feet in width.
The road commission is not required to make the traveled part of the highway the whole width of the road as laid out. It has the power to determine how wide the road shall be extended and used for public travel. By placing the concrete on this road of the width of eighteen feet it fixed the limits of the road. It determined that part of the road appropriated to the use of automobiles, vehicles and public travel generally. The width of eighteen feet of hard-surface road would seemingly be sufficient to accommodate public travel with convenience and safety. It is not expected that travel will occupy all parts of a road. The width of eighteen feet is sufficient to allow for passage of vehicles.
The defect, if it may be called a defect, was not on the traveled part of the road or that part of the road appropriated to public use. The complaint is directed against the berm of the road. It is charged that there was a depression or low place in this berm, but it is not shown that such depression or low place constituted an impediment to safe travel on the road. There was no obstruction of the road. The berm of the road is not used for travel. It is for the support and protection of the stone base and hard-surface.
Can it be said that the depression in the berm of the road was the direct or proximate cause of the accident? The occupants of the car were not forced onto or off the berm of the road for the purpose of avoiding a collision. There was, as above stated, no traffic coming from the opposite direction. It was not necssary to travel on the extreme right of the road. The improved portion of the road was sufficient to accommodate the reasonable and necessary requirements of the Lambert car. The duty to keep the highway in condition reasonably safe for travel thereon extends only to the traveled portion of such highway. Although the petition charges that the reason for traveling on the extreme edge of the road was to avoid traffic, the facts show no reason for doing so, since there was *190 no approaching traffic. Can it be said that the decedent was in the exercise of reasonable care at the time of the accident? The depression or low place in the berm did not constitute a defect in the road used for travel. Under the facts disclosed by the record the accident would have occurred if the road had been twice its width of eighteen feet. We are of opinion that the loss of control of the car by its driver was the immediate cause of the accident.
The claim has been carefully and ably presented by counsel, but upon the agreed statement of facts we are unable to see that claimant has a cause of action against the state. Where the record of a claim fails to show cause of action against the state for damages for the death of a person killed in an automobile accident on a public highway of the state such claim will be denied and dismissed.
The claim is accordingly denied and dismissed.