RUBY MAE CHRISTO, *Administratrix, etc., et al.*

*v.*

MARVINE DOTSON, *Administratrix, etc., et al.,*
THE WEST VIRGINIA TURNPIKE COMMISSION,
*a corporation*

—*and*—

MARVINE DOTSON, *Administratrix, etc.*

*v.*

HPO SERVICE, INC., *etc., et al.*

(No. 12583)

Submitted May 2, 1967.        Decided June 27, 1967.

698

*Steptoe & Johnson, Edward W. Eardley, Carl F. Stucky, Jr.,* for appellants.

*Kay, Casto & Chaney, John S. Haight, George S. Sharp,* amici curiæ on behalf of Hennis Freight Lines, Inc.

BERRY, JUDGE:

These consolidated actions arose out of an accident which occurred on the West Virginia Turnpike at Milburn Bridge near Milepost 52 about 16 miles north of Beckley, West Virginia on January 8, 1964. The vehicles involved were a highway postal van owned by HPO Service, Inc. then proceeding south and a tractor trailer owned by the Hennis Freight Lines, Inc. proceeding north. The drivers of both vehicles were killed as well as three post office employees who were working in the back of the HPO van. Marvine Dotson, Administratrix of the estate of Louis G. Rose, deceased, the driver of the Hennis vehicle, instituted an action in the Court of Common Pleas of Kanawha County, West Virginia, against HPO Service, Inc., Helen E. Williams, Administratrix of the estate of Cyril Williams, deceased, and the West Virginia Turnpike Commission, for the wrongful death of her decedent in the amount of $25,000. In that action a coun-

terclaim and cross-claim in the amount of $25,000 was filed by Helen E. Williams, Administratrix of the estate of Cyril Williams, deceased, driver of the HPO van, against Marvine Dotson, Administratrix of the estate of Louis G. Rose, deceased, Hennis Freight Lines, Inc. and the West Virginia Turnpike Commission for the wrongful death of her decedent. The HPO Service, Inc. also filed a counterclaim and cross-claim against Marvine Dotson, Administratrix of the estate of Louis G. Rose, deceased, Hennis Freight Lines, Inc. and the West Virginia Turnpike Commission for damages in the amount of $28,365.21.

Ruby Mae Christo, Administratrix of the estate of George Christo, deceased, Vincenta A. McGee, Administratrix of the estate of Hubert H. McGee, deceased, and Mae Robinson, Administratrix of the estate of W. Brent Robinson, deceased, all three deceased men being postal employees who were working at the time of the accident in the rear of the HPO van, instituted actions against Marvine Dotson, Administratrix of the estate of Louis G. Rose, Hennis Freight Lines, Inc., Frank Blackstone, doing business as Blackstone Motors, HPO Service, Inc., and the West Virginia Turnpike Commission, in the Circuit Court of Kanawha County each for $25,000 for the wrongful deaths of their respective decedents.

All of these actions were consolidated in the Circuit Court of Kanawha County, West Virginia, and tried by that Court in lieu of a jury. The trial court rendered judgment in favor of the plaintiffs, Ruby Mae Christo, Administratrix, Vincenta A. McGee, Administratrix, and Mae Robinson, Administratrix, personal representatives of the post office employees, in the amount of $25,000 each against the defendants, Marvine Dotson, Administratrix of Rose, Hennis Freight Lines, Inc., HPO Service Inc., and the West Virginia Turnpike Commission. The trial court held that the plaintiff Marvine Dotson, Administratrix of Rose, Helen E. Williams, Administratrix of Williams,

and HPO Service Inc. recover nothing in said action on their counterclaims and cross-claims. Motions to set aside the judgment rendered by the trial court were overruled on June 29, 1965, and upon application to this Court by all parties against whom judgments had been rendered an appeal and supersedeas were granted on June 27, 1966 to the West Virginia Turnpike Commission, but were refused as to all other parties. The judgments against all parties to these consolidated actions have become final except the judgments against the West Virginia Turnpike Commission, and the appeal granted to it was set on the April, 1967, Special Docket of this Court and was submitted for decision upon argument and brief for the West Virginia Turnpike Commission, along with an amicus curiae brief filed on behalf of the Hennis Freight Lines, Inc.

Considerable evidence was taken before the trial court during the trial of this case. The evidence tended to show that both the driver of the Hennis vehicle, Louis Rose, and the driver of the HPO vehicle, Cyril Williams, were guilty of negligence, which, of course, is imputed to their employers Hennis Freight Lines, Inc. and HPO Service, Inc. In fact, the trial court found from this evidence that they were guilty of primary and contributory negligence and appeals having been refused the trial court's judgment as to these matters is final, and the only question involved in this appeal is whether the West Virginia Turnpike Commission is also liable to the three plaintiffs whose decendents were riding or working in the HPO van at the time of the accident.

The evidence was conflicting as to whether there was ice on the Milburn Bridge at the time the accident occurred which caused the vehicles to slide into each other and therefore became one of the proximate causes of the accident. The trial court was of the opinion that if the Turnpike Commission was negligent in allowing this ice to remain, liability could exist as to it. Six witnesses testified that there was ice on the

bridge creating a slippery condition. Most of these witnesses arrived at the scene of the accident after it occurred. One of the witnesses testified that he almost fell down when he entered the bridge and another witness testified that there was an accumulation of snow on the bridge although this is clearly discredited by photographs taken soon after the accident showing that there was no snow on the bridge. Ten witnesses testified that there was no ice or snow on the bridge in question. These witnesses were drivers of ambulances, trucks, passenger buses, two state policemen and two employees of the Turnpike Commission. There was evidence that at some places on the Turnpike there were spots of ice but one of the state policemen who was patrolling the Turnpike and one of the Turnpike employees whose duty it was to scatter cinders and chemicals on any icy spots on the Turnpike and who was patrolling the Turnpike for that purpose stated that there was no ice on the bridge in question less than an hour before the accident occurred.

The accident occurred at 4:20 a.m. and the evidence indicated that the temperature was around freezing during at least the period of time stretching back to about an hour before the accident. The trial court held that the West Virginia Turnpike Commission had a duty to remove ice and snow if it had reasonable notice of the existence of such condition and had an opportunity to take preventive measures, and that while it was not an insurer, it did owe the drivers and passengers on the Turnpike the duty to use reasonable and ordinary care. It further found that as a matter of fact the Turnpike had on it ice in several places, and that from the testimony of the Turnpike Commission's employee and the state policeman the Turnpike Commission had actual notice of the conditions of the roadway and the bridges at least four hours prior to the accident. This finding of fact is not supported by the record as to the presence of ice on the bridge where the accident occurred, because the evi-

dence shows, as heretofore stated, that the state policeman and the Turnpike Commission employee testified that there was no ice on the bridge in question less than an hour before the accident occurred. The fact that there was ice on other bridges or other places of the highway would not necessarily be controlling in any event.

It has been held that the West Virginia Turnpike Commission is not an agent of the State of West Virginia as being immune from being sued in courts of law under the provisions of Article VI, Section 35, West Virginia Constitution. *Hope Natural Gas Company, a Corporation v. West Virginia Turnpike Commission*, 143 W. Va. 913, 105 S. E. 2d 630.

The method of establishing liability on the part of the Turnpike Commission in such a case as the instant one has never been before this Court for decision. This is a case of first impression in this State, and we are of the opinion that it is covered by the statutes providing for such cases which are not found in many other states.

The statutes in question relate to the liability of county courts, cities, towns, villages and turnpikes for injuries to persons by reason of any road, bridge or street, under their control, being out of repair. Code, 17-10-17, as amended, applies to county courts, cities, towns and villages and reads in part as follows:

"Any person who sustains an injury to his person or property by reason of any road or bridge under the control of the county court or any street or sidewalk or alley in any incorporated city, town or village, being out of repair may recover all damages sustained by him by reason of such injury, in an action against the county court, city, town or village in which such road, bridge, street, sidewalk or alley may be, except that such city, town or village shall not be subject to such action unless it is required by its charter to keep the road, bridge, street, sidewalk or alley therein,

at the place where such injury is sustained, in repair. If it is not so required, the action and remedy shall be against the county court."

This statute changed the common law and created a basis of liability which did not exist at common law. *Cunningham v. County Court of Wood County,* 148 W. Va. 303, 134 S. E. 2d 725; *Jones v. City of Mannington,* 148 W. Va. 583, 136 S. E. 2d 882. Many cases have been decided under this statute in which it has been held that liability in such cases is absolute if the municipal charter requires that the streets and sidewalks be kept in repair, and that no notice of defect or of the street being out of repair is necessary before the city, town or village can be held liable. *Burdick v. City of Huntington,* 133 W. Va. 724, 57 S. E. 2d 885; *Costello v. Wheeling,* 145 W. Va. 455, 117 S. E. 2d 513.

A comparable statute applicable to turnpikes is found in the next section of the Code, Code, 17-10-18, as amended, and it reads in part as follows:

"Any person who may be injured by reason of a turnpike, road or bridge belonging to any company or person, or to any county in its corporate capacity, being out of repair, may recover all damages sustained by him by reason of such injury, in the manner prescribed in the preceding section [§17-10-17], against such company, person or county, or against the lessee for the time being of any such road or bridge."

It may seem strange that although numerous cases have been decided by this Court construing and applying the companion preceding statute, Code, 17-10-17, as amended, none have been decided construing and applying Code, 17-10-18, as amended. However, it is clear beyond question that the same reasoning, the same law, and the same decisions apply to one statute as well as the other. There is no doubt under this section as to the liability of any company or person for an injury to any person by reason of such turnpike, road or bridge so owned or leased being out of repair.

All damages sustained may be recovered by reason by reason of such injury in the same manner as prescribed in Code, 17-10-17, as amended. Therefore, in the disposition of the case at bar we can, with complete assurance as to propriety, use the authorities decided under the preceding section, Code, 17-10-17, as amended. See *Hope Natural Gas Company, a Corporation v. West Virginia Turnpike Commission, supra.*

To discuss liability under the statute, we will discuss one of the early cases, that of *Yeager v. City of Bluefield,* 40 W. Va. 484, 21 S. E. 752, wherein the 5th point of the syllabus held: "While the liability of municipal corporations is in its nature absolute, that does not refer to the cause of action. That must exist before the liability arises." It was also held that a municipal corporation under the provisions of this statute is not an insurer against accidents on streets, and that every imperfection in the street is not actionable even though it may have caused the injury sued for.

In considering and disposing of the question of liability in such cases the Court stated in the *Yeager* case:

"Our state has great and often-recurring precipitation of rain and snow, especially in winter. Mud follows inevitably everywhere. No means at a town's command can prevent its presence in some quantity, even on crossings, and in small quantity it makes them slippery.

"In applying this statute we can consider the location of the road, the nature and circumstances of the particular section, the difficulty of keeping it in high repair without unreasonable expense, the season of the year, and the nature and amount of travel. * * * The mere slipperiness of a sidewalk occasioned by ice or snow — the same, certainly, as to mud — 'not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city liable for damages occasioned thereby. Where there is snow upon a

sidewalk, there is danger from slipping and falling, even on the best constructed sidewalks.' 2 Dill. Mun. Corp. §1006. This mud's presence was not a structural defect, not an obstruction.''

The general rule as to municipal corporations in such cases is that snow and ice alone do not constitute a defect. 63 C.J.S., Municipal Corporations, §811. This principle was clearly stated in the case of *Gorges v. State Highway Comm.* 137 Kansas 340, 20 P. 2d 486, in the construction of a comparable statute in the State of Kansas, wherein it was held that: "The accumulation of ice and snow on a state highway due solely to the action of the elements is not a defect within the meaning of R.S. 1931 Supp. 68-419.'' In order to establish liability based upon a defect in a street or highway of such nature for the street to be considered out of repair, there must be an accumulation of snow and ice amounting to an obstruction. 63 C.J.S., Municipal Corporations, §812. A municipal corporation is not bound to keep its sidewalks absolutely free of snow and ice at all times and under all circumstances. 63 C.J.S., Municipal Corporations, §813.

It was held in the case of *Boyland v. City of Parkersburg,* 78 W. Va. 749, 90 S. E. 347, that the word "repair'' as used in the statute includes an obstruction on the highway as well as defects in it, and that although ice and snow may render a street out of repair there must be an accumulation amounting to an obstruction before it can be within the purview of the statute creating a cause of action.

In the case of *Holsberry v. City of Elkins,* 86 W. Va. 487, 103 S. E. 271, where a pedestrian slipped and fell while walking on a sidewalk which had become slick and slippery by reason of snow having fallen thereon, it was held: "The effect of the statute is not to constitute a municipality an insurer against accidents, neither does it render it liable for an injury, unless the injury is caused by the obstruction of the street or its being out of repair, and by being 'out of repair',

this court has frequently said, means not reasonably safe for travel by the ordinary modes by day or by night, which is a practical question."

The case of *Rich v. Rosenshine,* 131 W. Va. 30, 45 S. E. 2d 499, construing the statute in question, makes it abundantly clear that although the statute imposes absolute liability against municipalities whose charters require them to keep their streets and sidewalks in repair, it makes them liable for damages for injuries resulting only from such sidewalks or street being out of repair or obstructed in such manner as to render them dangerous to persons using them with ordinary care and in the usual modes by day or by night, and that notice upon the part of the city that the defect exists is not necessary; that before liability can be imposed upon the city where it is alleged the injury was caused by slipping on snow or ice there must be an accumulation of the snow and ice so as to constitute an obstruction in order to constitute a cause of action within the meaning of "out of repair" as contained in the statute. This principle is clearly set out in the first point of the syllabus of the *Rich* case wherein it was held: "A public sidewalk, which a city by its charter is required to keep in repair, is out of repair, within the meaning of the statute, 17-9-33, Code, 1931, as amended, when the city permits it to be so obstructed by the accumulation of snow and ice as to render it unsafe for travel in the usual modes, with ordinary care, by day or by night." The statute referred to in this syllabus point was repealed and reenacted and is now contained in Code, 17-10-17, as amended.

The same principle in the construction of the statute in question was enunciated in the case of *Barniak v. Grossman Jewelry Co.,* 141 W. Va. 760, 93 S. E. 2d 49, wherein it was clearly indicated that in order to constitute a cause of action under the statute in question, the snow and ice upon a street or sidewalk must accumulate to such an extent that it causes an ob-

struction in order to fall within the meaning of being out of repair contained in the statute. This is clearly stated in the third point of the syllabus in that case in the following language:

"A city which is authorized and required by its charter to keep in repair public sidewalks is, within the meaning of Chapter 40, Article X, Section 17, Acts of the Legislature, 1933, First Extraordinary Session and Section 1, Chapter 89, Acts of the Legislature, 1949, Regular Session, liable for damages to a pedestrian occasioned by the slippery condition of the sidewalk when such sidewalk is obstructed by an accumulation of snow and ice so as to render it out of repair and unsafe for travel in the usual mode with ordinary care by day or night."

The mere fact that a street or sidewalk becomes slippery causing a person to fall does not constitute a cause of action under the statute in question as being out of repair. *Costello v. Wheeling,* 145 W. Va. 455, 117 S. E. 2d 513. This matter is clearly covered in 25 Am. Jur., Highways, §519, in the following language:

"It is generally held that a municipality or other public authority is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes, provided the street or walk is properly constructed, and no other defect is shown."

It was held in the recent case of *Jones v. City of Mannington et al.,* 148 W. Va. 583, 136 S. E. 2d 882, in dealing with the statute in question that: "The liability of a municipality under the statute is absolute in a sense, but that means merely that liability is absolute, even in the absence of negligence and in the absence of notice of the defect, provided the cause of action itself is established within the terms of the statute."

It was also held in the 5th point of the syllabus of the *Jones* case that: "While a municipality may be held liable in damages under the provisions of Code, 1931, 17-10-17, as amended, in the absence of negligence chargeable to it, a plaintiff may, nevertheless, be barred from recovery of damages in such a case either on the basis of his contributory negligence or assumption of risk." In any event, the accumulation of ice and snow on a street or highway, even where it constitutes an obstruction and comes within the meaning of the statute as being out of repair, must be the proximate cause of the injury before any recovery can be allowed. *Webb v. Sessler,* 135 W. Va. 341, 63 S. E. 2d 65; *Smith v. Penn Line Service, Inc.,* 145 W. Va. 1, 113 S. E. 2d 505.

The trial court held, and we think correctly so, that both the driver of the Hennis truck and the driver of the HPO vehicle were guilty of negligence, or contributory negligence, causing the accident and resulting in the fatal injuries out of which these actions arose. However, if the accident occurred by reason of the negligence of the drivers of these vehicles and would have occurred regardless of any conditions of the highway, there could be no liability on the part of the Turnpike Commission in any event. This principle is clearly stated in the case of *Overton et al. v. Wenatchee Beebe Orchard Co.,* (Wash.) 183 P. 2d 473. In that case the driver of the vehicle was driving too fast and went through the guard rails of a toll bridge. It was held that the accident was caused by the excessive speed of the vehicle and not a faulty condition of the rail. It was held in that case that the private owner is not an insurer of the personal safety of users of a bridge and is not required to keep the bridge in such repair that accidents could not possibly occur, but is merely required to keep the bridge safe for persons using the bridge in the exercise of ordinary care.

Even if there were some ice on the bridge where this accident occurred it appears questionable whether or

not it was the proximate cause of this accident without which there could be no recovery. However, there is nothing in the evidence contained in the record of this case to indicate that even if there were some ice on the bridge in question there was any accumulation of ice of such magnitude as to create an obstruction and to come within the meaning of the statute as being "out of repair". Therefore, from the authorities cited herein construing the nature of the absolute liability imposed upon the West Virginia Turnpike Commission under the statute, Code, 17-10-18, as amended, there could be no liability.

Under the facts contained in the record of this case the trial court should have, under the provisions of Rule 50(b), R.C.P., granted the defendant Turnpike Commission's motion for a directed verdict, either at the conclusion of the evidence when the motion was properly made or when the motion was again made to set aside the judgment and render judgment in its favor.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is reversed and set aside and a new trial is granted to the defendant West Virginia Turnpike Commission.

*Judgment reversed and set aside; new trial granted.*