WALLACE, JUDGE:
The claimant, Jonathan E. McDonald, duly appointed administrator of the estates of Norma Jean McDonald, James Edgar McDonald, and Penny Jo McDonald, deceased, seeks recovery for the wrongful deaths of the three decedents resulting from an automobile accident which occurred on January 15, 1976. Jonathan E. McDonald seeks recovery for damages to his 1973 Ford Pinto automobile.
On the date in question, at approximately 8:50 p.m., Norma Jean McDonald was proceeding northerly on W.Va. Route 19 about 3/10 *14 of a mile north of Clarksburg, West Virginia, and approximately five miles south of her residence in Spelter, West Virginia. Mrs. McDonald was driving a 1973 Ford Pinto automobile registered to her son, Jonathan E. McDonald, and was accompanied by two of her children, James, age 11, and Penny Jo, age 23. As she travelled a straight and level section of road of approximately one-half mile in length in the vicinity of Gore, West Virginia, Mrs. McDonald encountered a stretch of ice on the highway, lost control of the vehicle, and skidded into the southbound lane of Route 19, colliding with an automobile coming in the opposite direction. The impact caused the McDonald automobile to overturn and be thrown off the west side of the highway, resulting in the deaths of the three occupants.
The north lane of the portion of Route 19 in question is flanked on the east by a relatively steep bank which runs down to the highway. The berm of the northbound lane slopes gently downward toward the base of the bank, forming a shallow ditch some three feet off the surface of the highway. Water accumulating in the ditch normally would flow southward into a drain, and then underneath the road into a larger ditch below the west side of the highway. The fact was undisputed that the water did not drain properly. Instead, due to a clogged culvert, the water spread onto the northbound lane of the highway. It was established that this condition persisted for a considerable period of time prior to the day of the accident. During the preceding week, fluctuating winter temperatures caused the water to form a recurring sheet of ice on the road.
From the testimony of two employees of the respondent, Paul Pernell and Melton Malone, it is clear that the respondent had notice of the recurring ice condition, but also knew or should have known of the source of the water and ice upon the highway. The respondent’s garage was located approximately one quarter of a mile from the scene of the accident. On the day of the accident, several complaints were made to the garage as to the existence of ice on the specific portion of highway in question.
Respondent’s employee, Melton Malone, testified that he had salted and cindered the general area in question three different times on the day of the accident. The last application was made at approximately 3:40 p.m. He further testified, under cross-examination, that it was foreseeable that a combination of traffic and a continuous flow of water onto the road could eventually *15 negate the effect of the salt and allow the water to re-freeze. Although the ice had been treated, water continued to spread onto the highway from the shallow drainage area. No warnings were posted by the respondent to alert motorists.
It was established at the hearing that ice did re-form on the highway the night of the accident. Mr. Brice Warne testified that, while en route to Shinnston from Clarksburg at approximately 8:00 p.m., he encountered ice on the northbound lane of the portion of highway in question. Temporarily losing control of his vehicle, he slid into the southbound lane. Fortunately, Mr. Warne slowed and was able to regain control of his automobile. The existence of ice was further corroborated by the testimony of Corporal J. I. Plybon and Trooper Lowell Maxey of the Department of Public Safety, both of whom examined the highway at 9:05 p.m., or approximately 15 minutes after the accident. Corporal Plybon stated that a thin sheet of ice covered the northbound lane for about 50 to 100 feet south of the point of impact of the vehicles, and that water flowed across the highway for an additional 200 feet southward.
Following the decision in the case of Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947), this Court has repeatedly held that the State is not a guarantor of the safety of the travelers on its roads. “The State is not an insurer and its duty to travelers is a qualifed one, namely, reasonable care and diligence in the maintenance of a highway under all circumstances.” Parsons v. State Road Comm’n., 8 Ct.Cl. 35 (1969). The State can neither be required nor expected to keep its highways absolutely free of ice and snow at all times, and the presence of an isolated ice patch on a highway during winter months is generally insufficient to charge the State with negligence. See 39 Am. Jur.2d Highways, Streets, and Bridges §506. See also Woofter v. State Road Comm’n., 2 Ct.Cl. 393 (1944); Christo v. Dotson, 151 W.Va. 696, 155 S.E.2d 571 (1967).
The facts of this case, however, impel the Court to find negligence on the part of the respondent. The accumulation of ice and water on the highway was not due to natural elements, but to a clogged culvert, the routine maintenance of which was the admitted responsibility of the respondent. Liability has usually been found where governmental authorities have permitted gutters or culverts to become clogged and defective so that water flowing over the streets or sidewalks freezes, resulting in injuries. See 39 Am. Jur.2d Highways, Street and Bridges §516. Although it is unclear whether the respondent had actual knowledge or should have *16 had knowledge of the particular culvert adjacent to the site of the accident, the continuous flow of water onto the highway in January constituted an unusually dangerous condition. The respondent was chargeable with a .. duty to inspect and correct the condition within the limits of funds appropriated by the legislature for maintenance purposes.” Varner v. Dept. of Highways, 8 Ct.Cl. 119 (1970). After the applications of salt and cinders, there was still a flow of water onto the highway, and although the existence of ice had been temporarily relieved, the dangerous condition had not been completely remedied. The Court is of the opinion that it was foreseeable that the continued spread of water onto the road and the drop in temperature after sundown would result in the reformation of ice, posing a hazard for ordinary traffic. Failure to correct the situation constituted negligence on the part of the respondent.
While finding the respondent guilty of negligence in the maintenance of the highway, the Court cannot disregard the apparent lack of due care on the part of the driver, Norma Jean McDonald. It is the duty of all motorists to operate their vehicles in a reasonably prudent and cautious manner under all circumstances. See Williams v. Dept. of Highways, 9 Ct.Cl. 216 (1973). The testimony and photographs of the scene of the accident depict a lengthy stretch of level, straight highway. Visibility, under normal conditions, would be several hundred feet in both directions. The weather was clear. Mr. Warne stated that while proceeding at a speed of approximately 45 mph, he saw ice ahead in the northbound lane, yet took no precautionary measures before skidding on the ice. At that point, he, in his own words, “woke up real quick.” It was revealed that this section of icy road could be negotiated with reasonable safety at about 25 mph.
The Court finds, from the record, that the respondent was negligent in failing to properly maintain the surface of the highway under the conditions existing on the night of the accident. The Court further finds that Norma Jean McDonald negligently failed to exercise ordinary care against a visibile and hazardous condition, and that her negligence proximately caused the accident which resulted in her death and the deaths of her children. It is well settled that such contributory negligence will bar recovery, and, while sympathetic to the tragedy which was befallen the McDonald family, the Court disallows the claim of the Estate of Norma Jean McDonald. Swartzmiller v. Dept. of Highways, 10 Ct.Cl. 29 (1973).
*17 Regarding the claims presented by the Estates of James Edgar McDonald and Penny Jo McDonald, it is an established principle of law that the negligence of the operator of a vehicle cannot be imputed to the passengers therein, where such passengers are neither guilty of negligence nor exerted any control over the driver. Smith v. Dept. of Highways, 11 Ct.Cl. 221 (1977). As it has been shown that the negligence of the respondent was one of the concurring causes of the accident, recovery for the estates of the two McDonald children will be allowed. Long v. City of Weirton, ... .W.Va.,,214 S.E.2d 832 (1975).
As for the claim for damages to the 1973 Ford Pinto automobile belonging to the claimant, Jonathan E. McDonald, it is generally held, in the absence of statutory provisions to the contrary or in the absence of an agency relation, that contributory negligence of the driver will not be imputed to the owner of the vehicle who was not present at the time of the accident, was not concerned with the driver’s mission, and was exercising no control over the use and operation of the vehicle. 65A C.J.S. Negligence §168(2), p. 212. As there are no West Virginia statutes to the contrary, this Court will follow the general rule that where the owner of a vehicle lends it to another, who thus becomes his bailee, the contributory negligence of the bailee will not be imputed to the bailor. Therefore, the claim of Jonathan E. McDonald, for damages to his vehicle in the amount of $2,000.00, which figure represents the fair market value of said vehicle at the time of the accident, is hereby allowed.
In accordance with the above, the Court denies the claim of Jonathan E. McDonald, Administrator of the Estate of Norma Jean McDonald and allows the claim of Jonathan E. McDonald for damages to his vehicle in the amount of $2,000.00. It was stipulated by and between counsel for the claimants and the respondent that James Edgar McDonald was eleven (11) years of age on the date of his death; that he had a life expectancy of 58.65 years; and that funeral expense for his burial amounted to $630.50; and that such expense was necessary and reasonable in that amount. It was further stipulated that Penny Jo McDonald was twenty-three (23) years of age on the date of her death; that she had a life expectancy of 47.64 years; and that her funeral expense amounted to $647.70, which expense was necessary and reasonable in that amount.
The West Virginia Wrongful Death Statute, Code 55-7-6, as amended, on January 15, 1976, provided, inter alia, that a jury in such an action could award damages not exceeding $10,000.00 and *18 also the reasonable funeral expense, reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants. It further provided that the jury might award further damages not exceeding $100,000.00 if it could be demonstrated that the dependent distributees of the deceased sustained a financial or pecuniary loss. No attempt was made on behalf of the claimants in these claims to establish financial or pecuniary loss and, consequently, the damages in the James Edgar McDonald and Penny Jo McDonald claims are limited to $10,000.00, plus the respective funeral expenses. As a result of the foregoing, disposition of these claims is made as follows:
Claim No. CC-77-38a — Jonathan E. McDonald, Administrator of the Estate of Norma McDonald - Disallowed.
Claim No. CC-77-38b — Jonathan E. McDonald, Administrator of the Estate of Penny Jo McDonald - Award of $10,647.50.
Claim No. CC-77-38c — Jonathan E. McDonald, Administrator of the Estate of James Edgar McDonald - Award of $10,630.50.
Claim No. CC-77-38d — Jonathan E. McDonald - Award of $2,000.00.