GARDEN, JUDGE:
On January 7, 1975, claimant Mary Lou Cole, wife of claim *351 ant Wilson R. Cole, was operating a 1973 Plymouth Road Runner owned by him on West Virginia Route 21 near Beckley, Raleigh County, West Virginia. A single vehicle accident occurred in which she suffered severe injuries, two children of the claimants were killed, and the vehicle was destroyed. The claimants contend that the respondent was negligent in permitting a layer of ice to accumulate on the highway at the place of the accident. When Mrs. Cole drove onto the ice, she lost control of the vehicle, crossed the center line into the opposite lane of travel, ran up and then down an embankment and then crossed both lanes of travel and proceeded over a hill into a pond where the vehicle turned over in the water.
Trooper Bradford Vaughan investigated the accident. He testified that the surface of this particular section of State Route 21 is shaded by a high embankment on the west side of the highway adjacent to the southbound lane for a distance of “at least a hundred feet” and, if there is any ice on that portion of the highway, it does not thaw until mid-afternoon.
Trooper A. W. Maddy testified that he had passed the accident scene twice on the day of the accident. On his way to his office he had noticed that all of the road were covered with a thin layer of frost or ice and this spot was no different from the surface of the roads elsewhere. However, on his way through the accident scene later at about 11:00 a.m., he noticed that the ice was still present there, whereas the surface of the other roads was clear of the ice. He pulled off the highway immediately after he struck the ice and radioed the Beckley dispatcher to call the Department of Highways to send a cinder truck to that spot. He testified that he had not called earlier in the morning because
“As I previously testified, when there is a hazard in a general area, people have to live with it and they — everyone knows to be careful when it’s cold and when they know that the road is slick and everyone is careful. But I was especially concerned about it at 11 o’clock, because at that time the road was dry everywhere else. People were just zooming along there at the posted speed limit * * * and *352 possibly beyond, but I knew that an accident was going to happen. One had already happened and I was highly suspicious that another one was going to happen because the roadway was dry from Beckley all the way to there and it was dry from the other end of the icy spot south. That was the only slick spot and it was just over the crest of the hill as you’re going north and I was concerned that there was going to be an accident because no one suspected it at that time of day with the sun out shining.”
Mrs. Cole testified that she was driving at approximately 35 miles per hour. She did not see the ice. She could not remember doing anything mechanically to the automobile. She stated that she had driven through this area on previous occasions and had noticed slick spots there.
Other witnesses for the claimants and for the respondent corroborated the fact that ice existed on the surface of the road where the accident occurred.
Corporal A. C. Bartlect, a member of the Department of Public Safety, testified about the scene where this accident occurred as follows:
Q “Was that a known bad spot along the highway in Raleigh County?
A Yes, it was.
Q And had you ever notified the Department of Highways yourself, personally, about that bad spot?
A No. I had been there for years and the spot had always been there.
Q Are you saying it was common knowledge?
A Yes.
Q And what was common knowledge about it?
A Well, whenever the weather —• when it got cold, it usual *353 ly froze there, and it was always even in a little dry weather, there was still some water or something coming out through there, through the blacktop.
Q You don’t know — do you know where the water was coming from?
A No, I don’t. There’s a pond on one side and, of course, the hill on the other side, and I don’t have any idea.”
Following the decision in the case of Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947), this Court has repeatedly held that the State is not a guarantor of the safety of the travelers on its roads. “The State is not an insurer and its duty to travelers is a qualified one, namely, reasonable care and diligence in the maintenance of a highway under all circumstances.” Parsons v. State Road Comm’n., 8 Ct.Cl. 35 (1969). The State can neither be required nor expected to keep its highways absolutely free of ice and snow at all times, and the presence of an isolated ice patch on a highway during winter months is generally insufficient to charge the State with negligence. See 39 Am. Jur.2d Highways, Streets, and Bridges §506. See also Woofter v. State Road Comm’n., 2 Ct.Cl. 393 (1944); Christo v. Dotson, 151 W.Va. 696, 155 S.E.2d 571 (1967).
The facts of this claim reveal a common occurrence which exists throughout the mountainous terrain of West Virginia. Roads accumulate frost during cold winter nights. The frost remains on the surface of roads until it thaws. In areas shaded from the sun the surface of the roads naturally remain slick longer than unshaded areas. This condition is common on many of this State’s highways. Accordingly, the Court is of the opinion that the respondent was not negligent in the maintenance of Route 21. Although the Court is very sympathetic to the claimants, the Court is constrained to hold that, as there was lack of negligence on the part of the respondent in the maintenance of the highway, the claims must be denied.
Claims disallowed.