PER CURIAM:
On July 12, 1989, the claimants, husband and wife, were together on a Honda 1100 motorcycle riding south on U.S. Route 19, near Arnettsville, Monongalia County. They were on vacation and were traveling from their home in Michigan to ride through the mountains. The claimants allege that a large pool of water and debris had washed onto this road in the area of Fire Locator No. 11M N-19 485, and that respondent failed to prevent or otherwise warn the traveling public of this hazard, thereby causing the claimants’ accident. Both claimants suffered physical and emotional injuries when they fell from their motorcycle after it skidded out of control on the water.
The respondent denies negligence for the alleged water hazard and avers that the claimants’ own negligence and/or intervening and superseding causes were the proximate cause of this accident. The claimants contend that the respondent was negligent by allowing water to pool across Route 19 in the vicinity of their accident. Ms. Ruth Wilgus, whose house is above but within 30 yards of the accident site, testified that water and not debris was present on the road when the accident occurred. Ms. Wilgus remembers seeing the accident from her front porch. *72 She testified that the motorcycle came over a rise in the hill and the front wheel lifted up, and the motorcycle slid out from under the riders. Ms. Wilgus described this July 12, 1989, day as a hot afternoon. She testified that water “was oozing up in the cement — in the roadway. ” She recalled calling the respondent three or four times before the accident to complain about the ice that formed during the wintertime. She testified that water also collects on the road surface during the summertime. The record however is silent as to whether Ms. Wilgus likewise complained of this summertime condition to the respondent. Her last complaint concerning the wintertime road condition was one year before the accident. Ms. Wilgus stated the speed limit is 25 miles-per-hour m the vicinity of the accident and described it as a speed zone.
Mr. Woodrow Lake, a property owner of the vicinity of the accident whose home is above the accident site on an incline, testified that he too had observed running water on the road surface, and was advised by the respondent to construct a small dam-like structure to prevent water run-off from his driveway onto the roadway. However, when asked whether he had taken this action before or after the accident, Mr. Lake testified that he had constructed a speed bump type dam on his driveway after the accident. He had not spoken with respondent about the water on the road before the accident.
Richard Lee McGee, a police officer from the University Police Department, Morgantown, testified that he was three car lengths behind the claimants when their accident occurred. He stated that he was traveling 35-miles-per-hour, and that “they (the claimants) were going maybe a little faster than I was.” The Officer observed that when he claimants passed the Arnettsville School, they went over a little grade in the road, and began to slide. Officer McGee described the road surface as nice, and the weather as a beautiful, sunny day. He did observe an area of water on the right-hand side of the road, which extended halfway into the right lane. The Officer could not remember seeing water before on this section of roadway. He described the patch of water as rain-like, but could not estimate its depth. He added that, “the road is really windy and you don’t travel too fast on it...”.
James M. Beer, District 4 Clarksburg Road Maintenance Engineer for respondent, testified that he had not observed a water problem in the accident area prior to the claimant’s accident. When asked about the road condition that he examined after the accident, Mr. Beer stated, “I found absolutely nothing but I understand water may be seeping through the road but I have not found it any time I’ve been there and I haven’t found any signs such as alligator cracking or spalling that would indicate that a lot of water was coming through the road.”
Mr. Richards testified that as he topped the hill, traveling 25 to 30 miles per hour, he saw debris on the road surface. Although unable specifically to identify the debris on the road surface. Although unable specifically to identify the debris, he described it as muddy water. He was not immediately alarmed by the road condition, and believed he could travel over the water. He testified, “As we went over the rise, I noticed that there was muddy water in the road, quite a bit of muddy water in the road, but it was not enough that it concerned me because I’ve drove over water many times and had no problem whatsoever.” When the back end of the *73 motorcycle began to slide, Mr. Richards could not compensate for this and he lost control of the motorcycle. He did not realize the road was banked to the right, and he kept turning the will of the bike to the right to come out of the slide. It appears he did not reduce his speed of travel commensurate with the water hazard, nor did he attempt to avoid the water on the road. Mr. Richards made no attempts to go around the water, but instead he decided to drive through the water. His decision to keep the wheel turned to the right after he began to slide may have further contributed to this accident. Mr. Richards testified that “(I)f I could have kept the wheel pointed straight down the road, we probably would have made it...”.
The Monongalia County Sheriffs Department investigated the accident. Deputy Kenneth David Britton testified as the investigating officer that in his expert opinion, “...the vehicle went out of control basically because of some type of negligence on the part of either the operator, the passenger, or both parties involved.” When asked whether the water on the road surface was sufficient to cause the vehicle to go out of control, the Deputy replied, “In my opinion, if an individual had been operating the vehicle in a prudent manner within the guidelines of the posted speed limit, the accident should not have occurred.” The Deputy further testified that the speed limit in this area was 40 miles per hour. He described the water on the road as clear, and extending no more than one foot into the 22 foot wide southbound lane.
In accordance with the decision in the case of Adkins v. Sims, 130 W.Va. 645, 46 S.E. 2d 81 (1947), this Court has consistently held that the State is not a guarantor of the safety of the travelers on its roads. “The State is not an insurer and its duty to travelers is a qualified one, namely, reasonable care and diligence in the maintenance of a highway under all circumstances.” Parsons v. State Road Comm’n., 8 Ct. Cl. 35 (1969). The State can neither be required nor expected to keep its highways absolutely free of ice and snow at all times, and the presence of an isolated ice patch on a highway during winter months, or a water patch in summer is generally insufficient to charge the State with negligence. See A. Jr. 2d Highways, Streets, and Bridges §506 and Christo v. Dotson, 151 W.Va. 696, 155 S.E.2d 571 (1967).
In view of the foregoing, the Court is of the opinion that the claimants have not established negligence on the part of the respondent. Therefore, the Court must deny this claim.
Claim Disallowed.