STEPTOE, JUDGE:
Claimants, who are wife and husband, seek an award from respondent for damages arising from a vehicle accident which occurred about 8:35 a.m., on the 21st day of December, 1992, on a public road in Wayne County known as James River Road, as a result of which, it is alleged, Shelia J. Larsen sustained personal injuries, and both claimants sustained other damages.
Claimants’ position is that respondent was negligent in failing to eliminate a depression in the paved surface of James River Road, at or near the scene of the accident, in which ice formed in cold weather, and that Mrs. Larsen’s car hit ice in the depression and skidded, out of control and across the center line, and struck an oncoming vehicle; and that the alleged failure of the respondent to maintain the road was negligence which was the proximate cause of the accident.
Respondent denies any negligence on its part, and alleges that Mrs. Larsen’s negligence was the proximate cause of the accident.
James River Road, at and near the scene of the accident is a very old, brick-based, two-lane, asphalt-covered, much-patched secondary road, with a basic width of sixteen feet, six inches. It is not heavily traveled, and is classified by respondent, for maintenance purposes, as a third-priority road. At the scene it ran in a generally east-west direction. On its north side, it abuts the main line right-of-way of property of the CSX Railroad, the nearest rail of which is approximately 12 'A feet from James River Road, and the railroad track level is several feet above the level of James River Road. Between the railroad tracks and the traveled portion of the public road, the sloped surface *114 is covered with railroad ballast and vegetation. From time to time, surface water drain toward and upon the public road.
At and immediately before the accident, weather conditions were clear, cold and dry.
From the scene of the accident, one has an unobstructed view along the road, in an easterly direction of approximately 1200 feet, and in a westerly direction about 1000 feet. The road to the east has a gentle grade downward to the area of the accident, while the road to the west has a slightly rising grade from the area of the accident. The speed limit in the area was 35 miles per hour.
The only known eyewitnesses to the accident were Mrs. Larsen and Mr. Danny Ray Patton, the driver of the oncoming car which the Larsen vehicle collided.
Mrs. Larsen, alone in her car, was proceeding in a westerly direction along James River Road. She testified that she unusually drove at whatever speed limit might be in a given area, and that in this instance she was not exceeding 35 miles per hour. She further testified as follows:
“I drove down James River Road going west and I came over a little hill and started down the road and I saw something that I thought was water but I didn’t realize it at the time. I continued to go down towards there and when I was out onto the ice I lost, the car, the car slid, the rear end of the car slid over into the other lane and then I was unable to control it because of the ice, and collided with another' car.”
Her vehicle came to rest, straddling the north edge of the pavement and the berm of the roadway reserved for the use of westbound traffic, at a point a little west of the point of the collision.
It appears from her testimony that she made no effort to reduce her speed after having noticed what she thought was water on the surface of the road, but which turned out to have been ice. She testified that her skid started where she observed ice on the road, but failed to identify that point.
The accident was investigated by Lewis E. Foshee, Jr., Chief Field Deputy of the Wayne County Sheriffs Department, with the present rank of captain, who arrived upon the scene about an hour after the accident. As part of his investigation, he took two Polaroid photographs of the scene, which were admitted into the evidence as Claimants’ Exhibits No. 1 and No. 2, showing the damaged vehicles where they came to rest after the collision; and also showing the presence of ice over a wide-spread area of the paved road surface, extending along 300 feet or more along the road in the vicinity of the accident, in places which he identified as ice patches on the photographs. In some instances, the witness could not be sure that the spots were ice, saying they might have been just wet spots.
Claimants’ Exhibit No. 1 was taken by Captain Foshee from a point just west of the scene of the accident, while he faced toward the east, the direction from which Mrs. Larsen was driving *115 in approaching the scene. While the witness stand, Captain Foshee identified on this exhibit, with a red marker, the spots and strips, principally in the area of the yellow-painted center line, where he found ice on the surface of the road. To the Court, the designated substance appeared to be dark in color, not gleaming or jagged, and, therefore, probably soft ice or slush or perhaps just wet spots. This exhibit also shows, in the background, the James River Road to the east of the scene, for a distance of some 1200 feet, to the top of the rise and the place referred to by Mrs. Larsen as the “little hill”. In his written report, admitted into the evidence as Claimants’ Exhibit No. 3, Captain Foshee reported that claimant’s view of the scene of the accident, on her approach, was unobstructed.
Claimants’ Exhibit No. 2, a photograph taken by Captain Foshee while standing just east of the scene of the accident and facing in a westerly direction, shows ice or wet spots on the road surface and the positions of the Larsen and Patton vehicles at which they came to rest after the collision.
Danny Ray Patton, produced as a witness for the claimants, and the driver of the eastbound vehicle struck by the Larsen car, testified on direct examination, that there was ice on the road at the time of the accident; and that when he looked at Larsen car just before the collision, it was 60 to 80 feet from him, and sliding sideways; and that he thereupon headed for the ditch on h is side of the road, to avoid collision. On cross-examination, he gave 80 to 100 feet as the distance between cars when he saw the Larsen vehicle out of control. He added that the Larsen car seemed to him to be going 40 to 45 miles per hour when proceeding down the slight grade, in a westerly direction, toward the scene of the accident.
In neither the testimony of Mrs. Larsen, nor that of Captain Foshee, nor that of Mr. Patton, nor in the accident report prepared by Captain Foshee, Claimants’ Exhibit No. 3, (which contained brief statements as to the accident by Mrs. Larsen and Mr. Patton) is there any reference to a depression in the road, as presumed by the claimants’ expert witness, Mr. Dempsey.
Luther James Dempsey, Jr., a civil engineer with experience in road construction and maintenance, testified as an expert witness for the claimant, on the basis of his examinations of the scene of the accident, the first of which was on the 11th day of November, 1994, on the basis of respondent’s records of maintenance, and on the basis of certain sections of respondent’s Maintenance Manual. He testified to a subsidence, or a depressed area, “very noticeable,” in the vicinity of the accident scene, which he observed and which he believed, without stating why, was where the Larsen car went out of control on hitting ice. He further testified and opined that:
a) the natural flow of surface water, to and from the scene of the accident, was and is from east to west, and on both sides of the road; while there is a ditch to carry such water on the southerly side of the road, there is little or no ditching on the northerly side of the road, to carry off surface water from the CSX embankment; that surface water originating from the northerly side of the road, to the extend that it does not percolate, drains to the James River *116 Road, and, near the accident scene, onto the road, some of it settling in a depressed area, where it can and sometimes does take the form of ice;
b) the area where Mrs. Larsen went into a skid, it was suggested, was the depression to which he referred, which he did not locate with reference to any fixed object, or measure, or attempt otherwise to describe; and
c) the respondent’s Maintenance Manual required the respondent to repair, modify, or remove hazardous conditions in the traveled roadways, and this depression to which he referred was a hazardous condition which being visible should not have been allowed to continue to exist; and that the described hazard was the cause of the Larsen accident.
Other witnesses for the claimants, for the most part residents of the area, testified to wintertime presence of ice on the road, from time to time, but did not relate their sightings, in points of time or place, to the scene of the Larsen accident. Robert Jeffries, a road maintenance crew member employee of the respondent, called as a witness for the claimants, testified that before the 1992 accident of Mrs. Larsen, he had observed a “swag” in the road near the scene of the 1992 accident and that he had thought that it represented a cold-weather hazard because of its propensity to contain ice, but admitted that he had not communicated his opinion to responsible officials of the respondent.
Respondent’s witnesses testified to the lack of any previous accident at or near the side of the Larsen accident, resulting from ice on the road; to the fact that nobody had ever complained to respondent about the alleged depression or ice on the road in the vicinity of the accident; to the routine patrols it had caused to be made to discover hazardous conditions; and to the lack of any references, in its maintenance records, to the depression observed by Jeffries.
The numerous photographs submitted, including those taken by Captain Foshee, simply do not pick up a depression in the road; and the Court recognizes limitation of photography in displaying horizontal surfaces. There is no substantial evidence in the record showing the location of the alleged depression by reference to fixed objects, such as utility poles, centerlines or buildings; nor is there evidence in the record describing the depression by dimensions.
The assumption of the expert witness Dempsey as to the location of the depression is based upon the report of investigation by Captain Foshee, who did not mention a depression and whose photographs do not show a depression.
The witness Jeffries, called by claimants, attempted to fix the location of the depression by pointing to a place shown on a 1995 photograph, on which the Court cannot see a depression.
The foregoing leaves much to be desired from the standpoint of proof of causation of the accident in which Mrs. Larsen was injured. Assuming, however, that there was a depression (not perceptible to the Court from the photographic evidence), the Court believes, on the basis of the *117 juxtaposition of 1) the point of the collision of the vehicles, and 2) the place of the depression as determined by the witness Jeffries, and 3) the position of utility poles depicted in the Foshee photographs, that the depression was quite close to the point of collision, so close in fact that, given the speed of at least 35 miles per hour, of the Larsen vehicle when the skid began, the skid probably originated at a point in the road well eastward of the point of the depression. The Court believes that if there were a depression, it was not a causative factor in producing the accident.
The law is well established in this State that respondent has a continuing duty to exercise reasonable care and diligence in the maintenance of public roads in all circumstances. Hobbs v. Dept. of Highways, 13 Ct. Cl. 27 (1979). This duty, however, does not make the respondent a guarantor of the safety of travelers and their personal property, on the public roads. Adkins v. Sims, 13 W.Va. 645, 46 S.E.2d 81 (1947). Nor is the respondent required to keep its roads completely free of water and ice at all times. Isolated ice covering a section of a road during winter is generally insufficient to establish negligence on the part of the respondent. Cole v. Dept. of Highways, 14 Ct. Cl. 350 (1983).
The Court concludes that:
1. Complainants have failed to prove, by a preponderance of the evidence, negligence on the part of the respondent; and
2. Complainants have failed to prove, by a preponderance of the evidence, that respondent had actual or constructive notice of any defect in its road at the site of the Larsen accident, if any there was.
In view of the foregoing conclusions, it is unnecessary for the Court to address any other issues which have been raised in this matter.
Claim disallowed.